AMOS K. ASHBY

*v.*

TIMOTHY W. ASHBY et al.

[Filed May 12th, 1900.]

1. When a beneficiary under a will is also given the privilege to continue to occupy a mill under a requirement that he keep it in good repair at his own cost and pay for all needed repairs, and continues to occupy as prescribed by the will, he cannot afterwards be permitted to charge the expenses of keeping the mill in good repair against other devisees of the will. He cannot accept the benefits conferred by the will and disappoint the intent of the testator.

2. A provision in a will which requires a tenant to keep a property in good repair, which contains no exception relieving him from the duty to make

repairs occasioned by wear and tear or the elements, or other named reason, obliges the tenant to maintain the property in good repair without regard to the cause of dilapidation.

3. An obligation to keep a property in good repair and to pay for all needed repairs will prevent the obligated person from recovering for expenditures which were "necessary for the proper repairs of the building," whether they were of a permanent nature or not.

4. When a tenant is in possession of a mill, paying a fixed rent, and is also a remainderman to the extent of one undivided fifth part, and in order to increase his means of extending his business, does work in repair or restoration of the property, against the wish of the other remaindermen, he cannot, in equity, charge their estate with the expense of the work as a *bona fide* improvement of the common property.

5. The equitable rule granting relief against interested parties, who "stand by" without disclosing their rights, and see another do an act in ignorance of them, cannot be invoked when the other does the act in spite of the open opposition of the interested party.

6. Executors to whom is given no estate, but only a mere power to sell lands after a certain time, upon the failure of a certain person to purchase, have no authority to contract to charge the property with the expense of repairs.

On bill, answer and proofs.

The complainant, Amos K. Ashby, is the occupant of a grist-mill and dwelling-house property situate on Delaware avenue, in the city of Burlington. The property was owned by his father, Edward Ashby, who died on the 15th day of May, 1888, seized of the same in fee-simple.

Some four years before his death the testator had, on March 25th, 1884, demised the premises in question to the complainant by a written lease for the term of three years, at a yearly rental of $425, payable quarterly, with a covenant that if the lessee should have made

"material and substantial additions to the machinery of said mill at his own proper cost, and paid therefor, in case of his death during the continuance of this lease, his estate shall receive from said party of the first part such proportion of said cost as they then add to the value of and be worth to said premises. In case of the death of either of the parties hereto, then and in that case this lease shall cease and expire in six months from and following such death."

Ashby v. Ashby.

The lease also contained a clause for re-delivery of possession of the premises in as good condition as to repairs as they were at the time the leasing, ordinary wear and tear and destruction by the climate only excepted, and also this clause, " all necessary repairs to sd. mill property during the continuance of sd. lease to be paid for by sd. party of the 2nd part."

While the above-mentioned lease was in force, the testator, Edward Ashby, on June 19th, 1887, made his will hereinafter quoted, containing the two provisions regarding repairs, which are now the subject of dispute. There is an endorsement on the lease of March 15th, 1884, which indicates that it was intended to be continued for a year in addition to the term of three years demised by that lease.

On March 25th, 1888, a new lease was made by which the testator again demised the premises to the complainant for a further term of three years until March 25th, 1891, terminable in six months after the death of either party, with the same covenants and clauses as to repairs as are above quoted from the lease dated March 25th, 1884. While this term was outstanding, the testator, Edward Ashby, died as above stated on May 15th, 1888. The complainant continued to occupy the Burlington mill property under the terms of the lease dated March 25th, 1888, up to November 15th, 1888, that being six months after the death of the lessor and testator, Edward Ashby.

By his will the testator devised the residue of his real estate, including this mill, &c., to his wife, Lydia G. Ashby, during her life, with the following proviso:

"Provided, nevertheless, that my son Timothy W. Ashby shall be allowed to continue in the occupation of the homestead house, farm and mill property, in Mansfield township, if he elect to do so, and shall pay all taxes and keep the said property in good repair at his own proper cost and expense, and shall further pay the sum of three hundred dollars per year in four quarterly payments as a rental therefor during the life of my said wife; and it is my desire and request that my said son Timothy do so occupy the said premises on the terms aforesaid, but should he not elect to do so or should desire to vacate the said premises, then my said wife may rent the same to any other tenant on the best terms that can be obtained by her. And, provided also, that in like manner my son Amos K. Ashby shall be permitted to continue in the occupancy of my mill property, on Delaware avenue, in the city of Burlington, and

the dwelling on the S. W. corner of York and Delaware St, he paying all taxes and all needed repairs at his own proper cost and expense, and a further yearly rental of four hundred and twenty-five dollars to be paid in four quarterly payments to my said wife during her natural life, and subject to the same conditions, provisions and requests regarding my said son Amos as above made regarding my son Timothy.''

The testator further provided that upon the death of his said wife his property should be disposed of by various special legacies and devises, among others to Amos, a legacy of his own note for $1,000, and made this further provision as to the Burlington mill :

"And as an additional provision regarding the mill and dwelling house on Delaware avenue, in Burlington, it is my will, and I direct that my said son Amos K. Ashby shall be privileged at the death of my said wife to become the purchaser of said properties for the sum of ten thousand dollars [Here he makes a like provision for Timothy to purchase the Mansfield mill for $8,000], the said option and privilege to be theirs for the space of three months after the decease of my said wife, after which the said properties may be sold by my executors who are hereby authorized and empowered to convey the same in fee simple.

"*Eighth.* The rest, residue and remainder of my estate wherever situate, whether real, personal or mixed, I give, devise and bequeath to my sons, Timothy W. Ashby, Amos K. Ashby and David G. Ashby, and my daughters, Mary G. Vandergrift and Anna S. Phares, one equal undivided fifth part to each of my said children (my other children having been hereinabove provided for) to their heirs and assigns forever, and in the event of the decease of either of my said children during the lifetime of my said wife without issue, him or her surviving, then the said estate shall vest in such of my said five last-named children as shall at that time survive. And to their heirs and assigns forever.

"*Ninth.* I nominate, constitute and appoint my two children Timothy W. Ashby and Ella K. Ashby, and my friend, Henry S. Haines, of Burlington, N. J., to be the executors and executor of this my last will and testament."

The will was, on June 5th, 1888, proven by all the executors named, and they proceeded to settle the estate. The complainant continued to occupy the Burlington mill and house after his father's death and until the present time.

The complainant alleges in the bill of complaint that his occupancy of the Burlington mill was not " upon the precise terms and conditions suggested in said will," but as tenant of

his mother, the life tenant, and that he made his payments direct to her up to the time of her death, on October 23d, 1897. He further states that the mill building had become greatly out of repair because of the sinking of the floors and bending of the girders, and that in November, 1894, at a meeting between the complainant and the executors—who, the complainant claims, represented all the tenants in common with him—the complainant called their attention to the tendency of the floors to sink and made efforts to induce the executors to authorize an expenditure of $500 by the complainant in " making the required repairs," to be paid out of the property when sold. The complainant insisted it would cost more, but was willing to undertake the repairs for that sum. The plan failed, as one of the executors refused to assent. In the following spring—1895— the tidewater of the river rose so high as to cover the first floor of the mill several times, causing further damage to the foundation girders and floors. The city building inspector gave notice not to load the floors. The complainant alleges that the result was that Ella K. Ashby, one of the executors, finally authorized the work to proceed, agreeing with the complainant that if he would pay for the work as it went on, that what the estate did not pay for, her mother, the said Lydia G. Ashby, would have to see paid; that they would pay for all carpenter work and material, but if any repairs or changes were made to machinery, complainant would have to pay for that.

The complainant proceeded and spent $2,039.51 in rebuilding piers which had settled and additional new ones, restoring floors and joists which had rotted and renewing the old roof and rafters, which had so settled that they had to be replaced, and the third floor had to be removed and made new. The complainant claims that all these repairs and improvements were of a permanent nature and " necessary for the proper repairs of the building," and have added to its permanent value; that his co-tenants in common saw and knew of the work when it was going on and made no objection. He alleges that he has demanded that they consent to pay the expense he has incurred, but they have not done so, and that the executors have given

Ashby *v.* Ashby.

notice of the sale of the mill property under the power given them in the will. He prays that his right to be repaid out of the mill property, or from the proceeds of its sale, the full amount of his expenditures in repairing and improving the mill may be established, and that the said amount may be decreed to be a lien on the mill, and the defendants required to pay the complainant their proper proportion of said expenditure, and for an injunction against any sale by the executors or a disposition or encumbering of the premises until final decree.

The complainant has appended to his bill a list of the names of the persons to whom he paid money, and the amounts paid, with a few items showing for what the money was expended. This list he refers to as a copy of the items of his expenditures. It throws very little light on any other point than the amounts claimed to have been paid out by him. Nothing stated in the list shows for what portion or character of the work done the money was expended.

The complainant makes the executors of the will, and the other tenants in common of the property, defendants in his bill.

The tenants in common by their answer deny that they ever agreed with complainant to pay him $500 toward repairing the mill, and say that such an agreement was discussed but never reached. They deny any responsibility for the repairs made by complainant, and aver that he held and occupied the premises exclusively under the terms and conditions named in the will by which it was his duty to make all needed repairs to the mill; that the repairs made were such as natural wear and tear and his own overloading of the mill required to be made, and for which he was by the will required to pay without liability on their part to contribute.

The executors by their answer also insist that complainant's occupancy of the mill was in accordance with the exact terms and conditions of the will, and with no change whatever consented to by them, and they deny that the complainant occupied the premises as tenant of his mother, the widow of Edward Ashby. They allege that the threatened injury because of the sinking of the floors was the result of the complainant's over-

loading of the mill. They admit the meeting and discussion of the proposition to authorize the expenditure of the $500, but they deny there was any agreement. They admit that Timothy gave notice of his refusal to consent to allow the complainant anything for the proposed repairs, and that the latter was according to the will compelled to fix the property. They insist that the damage from the rising tides was a natural risk which the complainant voluntarily assumed. That the condition of the mill, touching which the building inspector gave notice, was caused by the complainant's negligence in overloading the mill. They deny that Ella K. Ashby authorized the work to proceed on any agreement with complainant to pay for it on behalf of the estate or of her mother, and aver that they refused as executors to obligate the estate for such repairs, or to depart from the terms of the will as to these matters. They deny that they encouraged the complainant by promise to make the expenditures for repairs, and insist that he did this under the terms imposed on him by the will under which he continued to occupy the premises. They admit the repairs made were necessary for the proper repair of the building as required by the will, and that they added to the permanent value of the building, as all such repairs would. They admit that they noticed the complainant to purchase or vacate, and that they proposed to sell under the power given in the will. They deny that the complainant has any equity in the premises, and aver that the annual rental, $425, is low, and that the testator intended that it should be so made in order that the additional sum necessary for repairs should be made a fair rental for the premises.

The complainant applied for a preliminary injunction to restrain the executors from selling until his equities were determined. This was refused on the ground that the bill did not state a case as against the executors, which was free from doubt, and that the complainant had delayed his application to so late a day that the injunction might unduly oppress other parties interested, and the rights of the complainant, if he had any, might be as well protected by retaining the proceeds of the executors' sale under the control of the court.

*Mr. Charles E. Hendrickson* and *Mr. David J. Pancoast,* for the complainant.

*Mr. Clarence T. Atkinson* and *Mr. Mark R. Sooy,* for the defendants.

GREY, V. C.

The first point to be determined in this case is whether the continued occupancy of the mill property, &c., after November 18th, 1888, by the complainant was under the terms prescribed by the testator in his will or under some special agreement with the life tenant, Lydia G. Ashby.

The *status* of the complainant, in his occupancy of the mill, is a most important factor in the settlement of the question whether he is entitled to be allowed for the repairs by him made to the mill.    If he held the mill under the terms prescribed by the testator in the will, and the work done was within the class of repairs which he was by the will required to do at his own cost, then his expenses for repairs made cannot be charged against the defendants, who are his co-tenants in common.    If the complainant held the premises as tenant of the widow, the expenses of repairs must be borne by the person who, under the terms of their agreement of letting, was obliged to meet them. If he occupied free from any obligation to do the work under the terms of the will or of the lease from the widow, but simply as co-tenant, then expenditures for necessary repairs and proper betterments, if honestly made by him as tenant in common in good faith for the improvement of the property, may present an equitable claim.

By the operation of the testator's will, the widow, Lydia G. Ashby, took an estate for life in the premises, subject to a privilege permitting Amos to continue in the occupancy of the mill, &c., upon the terms prescribed by the testator, which were that Amos should " pay all taxes and all needed repairs at his own proper cost and expenses" and a yearly rental of $425 per annum, payable to the widow in four quarterly payments, during her natural life.   He was also, to quote the words of the

will, to occupy the Burlington mill, "subject to the same conditions, provisions and requests * * * as above made regarding my son Timothy." In the preceding part of the same paragraph Timothy was required, touching the Mansfield mill, to "keep the said property in good repair at his own proper cost." Amos was therefore to hold the Burlington mill, charged by the testator with an obligation to keep that in good repair and to pay for all needed repairs. But should Amos not elect to continue to occupy, or should he desire to vacate, the premises, then the widow might rent the same to any *other tenant* on the best terms that could be obtained by her.

By the residuary clause the title in fee to the Burlington mill, &c., passed to the residuary devisees, but subject to an option given to Amos to purchase it at the price of $10,000 within three months after the death of the widow, and if the option was not exercised during the period specified, then further subject to a power of sale, under which the executors were authorized, but not directed, to sell the property.

At the time of the testator's death, May 15th, 1888, the complainant was a lessee in possession of the Burlington mill property. He continued in possession during the further six months to November 15th, 1888, after the death of the testator and lessor, as provided in the lease. He further continued in possession from that time to the death of the widow and life tenant, on October 23d, 1897, and up to the present time, and he did not, though notified so to do, exercise his option to purchase at the price of $10,000 fixed by the testator.

The complainant in his bill of complaint alleges that he did not hold the mill under the conditions prescribed by the will, and has sought to sustain this allegation by proof. That he did in fact continue in the occupancy of the mill after his term of his lease had expired, is not denied. He admits that he continued to pay $425, the same rental prescribed by the will. He attempted to show that he had declared that he was not bound by the will, but his testimony was quite contradictory. He stated in one part that he told this to his sister Ella about September 22d, 1890, but to no one else. At this time he had continued

in the occupancy of the mill for over two years after the will
was proven, and about eighteen months after his lease had
expired. In another part of his testimony he declared that
when the will was read he had stated that he would not abide
by the will in the presence of all the heirs and of the executors.
This was denied by several of the heirs, and the proof is undisputed that he continued in possession without any other arrangement than that fixed by the will. He attempted to show that
he made an agreement to hold under his mother the life tenant.
When probed, this supposed agreement was shown to have been
a mere claim set up by the complainant that his mother had
accepted a settlement of the rent due from him by which she
allowed him for repairs made by him, and this he insists should
be held to have been a recognition of his rights to such an allowance. The proof does not sustain his claim that any such statement was made, and if there were, it would, in the absence of
some binding contract to allow for repairs, have been a mere
gratuity. Furthermore, no agreement of the widow to allow for
repairs could charge the estate of the remaindermen with such
expenses.

The weight of the evidence goes to show that the complainant,
ever since the expiration of his term as lessee, six months after
the death of the testator, has "continued in the occupany" of
the Burlington mill by acceptance of the terms of the testator's
will in that particular. This, under the proofs, he did in actual
fact. There is an entire failure to prove any refusal to accept
the terms of the will, or that the complainant's occupancy was
under any other agreement.

The course of the defendant in continuing in the occupancy
of the mill under the terms prescribed by the will, and accepting the legacy and devise therein given to him, have imposed
upon him an obligation to perform the conditions prescribed by
the testator. He cannot accept a benefit under the will and disappoint the intent of the testator. He might decline to occupy
and vacate, but he might not continue to occupy, except upon
the terms prescribed by the testator.

The benefit of the gifts conferred upon the complainant by the

same will do not appear to have been in any way disclaimed by him. He was forgiven $1,000, which he owed his father's estate, and received the gift of a one-fifth interest in the residue. His bill of complaint shows that he is now asserting rights of ownership in the Burlington mill which he claimed under this residuary devise. Having continued in the occupancy of the mill and accepted the benefits of the will, he must be held to have assumed the coincident obligations imposed upon him by the testator. *Blake* v. *Bunbury, 1 Ves. Jr. 523; Bird* v. *Hawkins, 13 Dick. Ch. Rep. 229,* and cases there cited. He was bound to keep the mill in good repair at his own proper cost, and to pay for all needed repairs.

There is nothing in the proofs to show that the complainant occupied the mill under his holding of a one-fifth interest in remainder. As remainderman he had no right of possession whatever during his mother's life. He sought to induce the executors to approve of the expenditures for repairs, and to undertake to pay them out of the estate, but they made no agreement to that effect. His acts were not those of a remainderman, but of an under-tenant in possession, paying rent. He was willing, he wrote to Ella, one of the executors, to put the mill in proper condition to enable him to store a larger stock on the upper floors, if she said so, even if Timothy refused to consent. It was to facilitate his own means for doing a larger business as tenant in possession, and not to improve the property, that he did the work.

There is some mention in the pleadings, and also in the testimony, of a meeting of the executors, and of an undertaking by them to arrange for the making of repairs to the mill. Several incidents of this sort are related, reciting the statements or action of Ella K. Ashby, who is one of the executors, but is not one of the tenants in remainder. She denies in her testimony that she ever did more than consider and favor the proposition to spend not exceeding $500 on the repairs, and this was a suggestion only, expressly dissented from by Timothy, one of the remaindermen, and not shown to have been assented to by the others, nor to have been accepted by the complainant. The weight of

the evidence goes to show that there was no agreement for these repairs at all, between any of the parties, not even by the executors.

Irrespective of the actual conduct of the executors, the terms of the will clearly show that they had but a naked power of sale, to be executed upon the failure of Amos to purchase within three months after the death of the widow. Such a power confers no authority upon the executors to contract to charge either the general estate of the testator, or the estate of the life tenant, or of the remaindermen, with the expenses of repairs or improvements. The power of sale lay dormant, a mere possibility, until upon the failure of the complainant to take the property after the widow's death, within the time prescribed by the testator, it became effective; but even then only to make sale of the premises as empowered by the will.

Upon all the proofs it is shown that the complainant continued to occupy the Burlington mill on the expiration of his lease six months after his father's death, under the terms of his father's will, which obliged him to "keep the property in good repair" and to pay for "all needed repairs at his own proper cost," &c., and not as lessee under a special agreement with his mother, the life tenant, nor as remainderman.

It being established that the complainant continued in the occupancy of the Burlington mill under the provisions of the will, it is to that instrument we must look to ascertain what obligations the testator imposed upon his sons for the privileges there secured to them. The will offered to each son the choice either to continue to occupy upon the terms the testator named or not to occupy on those terms, and if he desired to vacate the widow might then let the property to *some other tenant* upon the best obtainable terms. The testator intended, for some reason satisfactory to him (possibly to prevent disputes in the family or imposition by the sons upon the widow), to dictate the things which each son should do if he continued to occupy his mill. They were given a preference of occupancy, but only on the terms prescribed by the testator. If they refused to accept

Ashby v. Ashby.

these the widow was authorized to let to *some other tenant* on the best obtainable terms.

The words of the will, prescribing what the complainant should do touching repairs if he continued to occupy the Burlington mill, are entirely clear of doubt, and there is no need to look into the surrounding circumstances to ascertain the testator's intent.

It remains to be ascertained whether the repairs made were such as were within the terms imposed by the will.

The work that was done on the Burlington mill by the complainant, taking the showing of all the evidence, was occasioned by the fact that in 1895 the mill had come to be in such a bad condition of repair that the complainant was unable to carry on in that mill as large a trade as he desired and found to be necessary in order to make it profitable to himself as a miller conducting an active business. This dilapidation of the Burlington mill was caused by inherent defects of construction, by its location on the river bank, by the action of the tides and of the elements, by non-repair for years when it had become necessary and by the complainant's overloading of the mill beyond its capacity to bear the weight of the grain and machinery which he found it necessary to store in it in order that he might make the business profitable to him.

The terms imposed upon the complainant by his father's will under which he continued to hold the property, and was in possession at the time the work was done, obliged him as stated to " keep the property in good repair at his own proper cost," and to pay for "all needed repairs." These provisions contained no exceptions relieving the complainant from repairing the property to the extent that it might deteriorate by wear and tear, by the elements, or by any other cause. He had agreed by accepting the continued possession to keep it in good repair, without regard to the cause which occasioned the dilapidation. In *Brecknock Co. v. Pritchard, 6 T. R. 750,* there was a covenant " to uphold and keep in complete repair for seven years " a bridge. Destruction was caused by a flood, and it was held in

the absence of some exception covering this mode of loss that the covenantor must rebuild.

The complainant in his bill of complaint has defined and characterized the nature of the work done; when having narrated the details of it, he alleges that "all the repairs and improvements thus made were of a permanent nature and character, and *were necessary for the proper repairs of the building,* and have added to its permanent value." By this averment the complainant himself places the work done within the class of needed repairs which, under the terms imposed upon him by the will, he was bound, while he continued to occupy, to keep up and to pay for at his own proper cost.

Assuming the work done to have been either in whole or in part improvements, as distinguished from repairs, the complainant has failed to establish any equity which would justify a decree compelling the defendant to pay for them. The transaction differs radically from the claim by a tenant in common who in good faith improves the common property, to have that part where he has improved set off to himself, or the value of the improvement allowed to him.

The Burlington mill was an entirety; it was manifestly impossible to divide or to apportion it. The complainant knew this, and did nothing in any expectation that the part on which he spent his money could be set off to him. Nor did he do the work as a devisee, owning a one-fifth share, for the improvement of the property. His letter to Ella, and all the proofs show that he wanted an express agreement to indemnify him, and did not undertake to "fix the mill" under a claim of right to improve as a part owner.

The doctrine of "standing by" while improvements were made in ignorance of adverse claims has no application, and cannot be invoked against the defendants. The complainant was fully informed, before and at the time he made the changes in question, that the remaindermen affirmatively opposed the expenditures which he was making. He was in no way misled by their silence, and having acted with knowledge of their

opposition, he cannot now set up an equity which is dependent upon his want of notice at the time he acted.

Again, under the terms of the will, the complainant was to be permitted to continue in occupancy of the mill, &c., during the life of the widow, he paying the named rent, taxes and keeping the property in repair. When he did the work in question he knew that he was secured by the will, until the end of the life estate, against any increase of rent, because of any greater value given to the property by the work done. His interest in the property as remainderman was but one-fifth, but his actual enjoyment as tenant in possession was an entirety. To authorize the complainant, under such circumstances, at his own choice and against the wishes of the tenants in remainder, who were out of possession, to make improvements of the common property, of which he had had full enjoyment, and to charge the expenses to the remaindermen, with no return to them for his continued use of the improvements, would be grossly inequitable. He might thus, during the life estate, have used up all the improvements, and yet have called on the remaindermen to pay for them.

The expenditures which the complainant made, considering all his relations to the property, when openly opposed by some of the other parties interested, and to the extent that he made them, by all, cannot be said to have been in good faith as tenant in common of one-fifth in remainder, but rather for his own benefit, as tenant of the entirety in possession during the life estate, with notice that the remaindermen would not be responsible for them.

The complainant has shown no equity which justifies either a restraint of the exercise of the executors' power of sale, or charge of the expense of the work done, upon the estate of the remaindermen or upon the proceeds of the executors' sale.

The bill of complaint should be dismissed, with costs.