Williams, Judge,
delivered the opinion of the court:
This is a suit brought by the Nashville Industrial Corporation, a corporation organized under and by virtue of the laws of the State of New Jersey, with its principal office and place of business at Nashville, Tennessee, for the use and benefit of certain insurance companies for sums of money paid by the said insurance companies to the Nashville Industrial Corporation because of the destruction by fire of certain property of the said corporation on which insurance companies had issued policies of insurance.
The suit is based on the contention that the Government by contract had agreed to save the corporation and its privies harmless against any and all loss or damage to the said property, and the insurance companies having paid the said loss are entitled by the right of subrogation to recover from the Government the amount so paid.
During the World War the Government of the United States acquired a large tract of land in Davidson County, Tennessee, and erected and located thereon a large plant for the manufacture and storage of smokeless powder. Some 8,100 buildings were erected on the land so acquired and a plant for the purposes stated was completed by the acquisition of all necessary easements, appurtenances, and facilities. The plant was known as the “Old Hickory Powder Plant.”
Under an act of Congress of the date of July 9, 1918, the President of the United States was empowered to sell surplus war supplies, equipment, material, plants, factories, lands, and buildings used for the purpose of producing war supplies of any character.
*456 Under tbe authority thus conferred on him the President, acting by and through the Secretary of War, who was represented in the transaction by one Dwight K. Shurtleff, a major of ordnance of the United States Army, on November 22,1920, entered into a written contract with the plaintiff corporation under which the Government agreed to sell and deliver, and did sell and deliver, to plaintiff certain of the property owned by the Government and included in, pertaining to, connected with, or a part of the said Old Hickory Powder Plant. The Government in the said contract reserved certain personal property, including a large quantity of smokeless powder, and further reserved for a period of five years certain designated areas of real property for the storage of smokeless powder. Article XXVI of the contract provides:
“ * * * The purchaser, whether or not insurance is taken out on said property, shall provide and maintain on the premises adequate personnel and material for the protection of said property against fire satisfactory to the vendor; provided that the purchaser shall not be compelled to maintain for this purpose greater personnel and material than is at present used.”
Article XXX of the contract provides:
“ * * * Provided that the vendor shall hold the purchaser and its privies harmless against any and all loss or damage which may arise as a result of the storage or removal of any property of the vendor on the premises.”
The terms of the contract between the parties of the agreement were subsequent^ modified by a court decree as to the amount of purchase price, terms of payment, etc., but Articles XXYI and XXX above quoted were not modified or changed in any respect.
The Government stored on the premises of the Old Hickory Powder Plant about 92,000,000 pounds of smokeless powder, the greater part of which was stored in buildings within the area reserved for such purpose under the terms of the contract. There were, however, five buildings outside of the reserved area that contained some of the powder.
On the morning of August 10, 1924, a fire broke out in building No. 8 in the reserved area, in which powder was *457 stored. All the buildings in the reserved area in which powder was stored and the five buildings in which powder was stored outside of the reserved area were destroyed. The fire spread and was communicated to other buildings and property adjacent thereto, which were also destroyed, all of which buildings and property was a part of the premises and property acquired by the plaintiff from the Government under the contract aforesaid.
The cause of the fire has not been definitely established. It started, however, in a building in which powder' was stored, and which was under the absolute custody and control of the Government. The reserved area, within which building No. 8 was located, was surrounded by an iron fence six feet high with two barbed wires on the top thereof. The area was patrolled day and night by employees of the Government. No one connected with the plaintiff company was allowed inside this area, or inside any of the buildings outside of the area ivhere powder was stored except on a special pass or when accompanied by an official of the Government. No one connected with the plaintiff corporation had been in or around the building in which the fire originated or other buildings where powder was stored for several weeks previous to the fire.
The plaintiff received from the insurance companies, for whose use and benefit this suit is brought, for losses sustained by it as a result of the-fire of August 10, 1924, the sum of $111,097.84, as follows:
Name Date Amount
Detroit Tire & Marino Ins. Co_ 10-10-24 $8,855.45
Michigan .Fire & Marine Ins. Co... 10-25-24 6,641.61
Aetna Insurance Company.. 10-11-24 21,695.67
New Zealand Insurance Company. 10-22-24 8,855.45
Niagara Fire Insurance Company.. 10-22-24 9,696.66
Peoples National Fire Ins. Co.. 11-12-24 13,283.16
Providence Washington Ins. Co_„. 10-27-24 8,855.45
Springfield Fire & Marine Ins. Co. 10-14-24 17,717.33
Union Ins. Society of Canton_ 11- 3-24 6,641.61
United Firemen's Ins. Co — . 11- 5-24 8,855.45
Total. 111, 097.84
*458 Counsel for the Government in the statement of the case, page 263, say:
“ The defendant has tried this case upon the theory that the Nashville Industrial Corporation was bound by its contract, Exhibit A, Article XXVI, to ‘ provide and maintain on the premises adequate personnel and material for the protection of said property against fire, satisfactory to the vendor; provided the purchaser shall not be compelled to maintain for this purpose greater personnel and material than is at present used.’ It is defendant’s contention that the plaintiff did not do this, and it is one of the most important facts in the case.”
The court has determined in its findings of fact in this case (Finding XVII) that “ the fire department that was maintained by plaintiff subsequent to the time that plaintiff took possession of the property purchased from the Government was as good as to personnel and material as the one previously maintained by the Government.”
The argument made by counsel in support of this proposition was entirely proper. It was based on the evidence as counsel construed such evidence. Since the court does not take that view of the evidence, and has found that the plaintiff was not derelict in its duty in that respect, further discussion of this point is not deemed necessary.
The authority of the Government to enter into the contract made with the plaintiff corporation is not challenged, and it is therefore not necessary to cite authorities in support of that proposition. The rule is well established that when the Government of the United States contracts with its citizens it is controlled by the same laws that govern citizens in that behalf and that such contracts are to be construed in the same manner as similar contracts entered into between citizens.
The contract in question being valid, and the authority of the War Department acting for and on behalf of the defendant to write into the contract of sale, Article XXX of said contract, “ provided that the vendor shall hold the purchaser and its privies harmless against any and all loss or damage which may arise as a result of the storage or removal of any property of the vendor on the premises,” it only remains *459 to be seen whether the plaintiff is entitled under that provision of the contract for the use and benefit of the insurance companies, to recover the amount paid by them to the plaintiff for its loss occasioned by the fire of August 10, 1924.
The insurance companies were advised of the protective provisions of the contract of sale of the premises by the Government of the United States to the plaintiff. The policies of insurance were of standard form and carried subro-gation rights and agreements and the plaintiff carried into effect such subrogation rights and agreements by executing proper transfers and assignments to the said companies.
On the date of the fire, August 10, 1924, there was insurance in force in the amount of $1,377,214.24, all the premiums of which had been paid by the plaintiff. The amount of the insurance collected from the companies for whose use and benefits this suit is brought, the sum of $111,097.84, is set out in Finding XI.
The fire of August 10, 1924, as has been stated, originated in a building within the area reserved by the Government for the storing of powder, and over which it had exclusive control. It had stored the building Avith powder, and there is not the slightest doubt that the loss sustained by the plaintiff was the direct result of such storage of powder by the defendant. The plaintiff was not at fault and contributed in no way to the loss sustained by it. Under these circumstances we do not regard the cause of the fire as material. The defendant had in the contract of sale covenanted with the plaintiff to hold it and its privies harmless against any loss or damage that might arise as a result of such storage of its poAvder in the area reserved for that purpose.
The validity of this provision of the contract not being in question, we think the defendant is clearly liable to the plaintiff corporation for the amount of loss sustained by it as a result of the fire, and that both under Article XXX of the contract, and as a matter of law, the insurance companies by the rights of subrogation are entitled to the amounts of insurance paid by them to the plaintiff on account of losses occasioned by the fire of August 10,1924, and that the plaintiff is entitled to recover for their use and benefit.
*460 “ The mere payment of a loss by the insurer does not indeed afford any defense, in whole or in part, to a person, whose fault has been the cause of the loss, in a suit brought against the latter by the assured. But upon familiar principles, often recognized by this court, the insurer acquires by such payment a corresponding right in any damages to be recovered by the assured against the wrong-aoer, or other party responsible for the loss. * * * ” {The Potomac, 105 U. S. 630.)
In British America Ins. Co. v. Colo. & S. R. R., 125 Pac. 508, 41 L. R. A. (N. S.) 1207, where the statute of Colorado made railroad companies liable for all fires caused or set by them irrespective of negligent or wrongful acts, it was held that the statute made the railroad company primarily liable for any loss due to fires set by them, and where an insurance company had paid the amount of insurance on property so destroyed, the insurance company was entitled to recover from the railroad company on the theory of subrogation, the court said:
“ The statutory liability of the railway company is based on the theory of indemnity or security. If the insurance company pays the loss it is entitled to whatever primary security was held by the owner and this includes all the liability of the railway company to the owner.”
The contract of sale made and executed November 22, 1920, by which the premises in question were sold by the Government to the plaintiff was modified somewhat by a decree of the district court of the United States for the district of Tennessee, entered on February 23, 1924. We have not deemed necessary a discussion of this decree, or the litigation between the parties herein out of which it resulted, because it in no way changed or modified either Article XXYI, or Article XXX of the original contract upon which the issues of the instant case turn.
The plaintiff is entitled to a judgment for the sum of $111,097.84, for the use and benefit of the insurance companies named and for the amounts stated in Finding XI. It is so ordered.
Littleton, Judge; Green, Judge; Graham, Judge; and Booth, Chief Justice, concur.