## THE CONTAINER CO. et al. v. UNITED STATES.
### No. 48622.

United States Court of Claims.
June 5, 1950.

Bernard J. Gallagher, Washington, D. C., for the plaintiffs. M. Walton Hendry, Washington, D. C., was on the brief.

Thomas L. McKevitt, Washington, D. C., with whom was Assistant Attorney

General A. Devitt Vanech, for the defendant.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

JONES, Chief Judge.

On March 6, 1944, the greater portion of a building leased by the United States from plaintiff, The Container Company, was destroyed by fire. Plaintiffs seek to hold the United States liable under the lease for the damage. Plaintiffs contend that the second floor of the building had been overloaded in violation of the terms of the lease and that this and other acts of negligence caused the fire. Plaintiffs claim that the United States breached its obligations under the lease not to overload the building, to repair immediately any damage caused by loading, and to return the premises in the same condition as when received, reasonable wear and tear and damages by the elements excepted.

The lease, entered into on August 25, 1943, covered certain land and buildings in a plant in Rockaway, New Jersey, which the United States wanted for warehousing, packing, and shipping. The term was from September 1, 1943, to June 30, 1944, renewable at the Government's option; rental was $50,000 per annum. The lease was on the standard United States lease form. However, Paragraph 9 of the standard form, obligating the *lessor* to maintain the premises in good repair and tenantable condition, except in case of damage arising from the act or negligence of the Government's agents or employees, was deleted. The following covenants were typewritten into the lease:

"*Paragraph 16*

"The Government has examined the premises and is familiar with the structures. It specifically agrees that it shall not overload any structure covered by this lease and that if any damage is occasioned by reason of loading, it will immediately repair the same.

"*Paragraph 17*

"Upon the expiration or sooner termination of this lease, the Government shall return the premises in their present condition, reasonable wear and tear and damages by the elements excepted.

On September 1, 1943, the defendant contracted with the Cardinale Export Packing Company to operate and manage the leased premises. Although some Government employees were stationed at the plant, Cardinale was in possession.

On February 20, 1944, a Government Inspector discovered overloading on some of the floors, including the second floor of Building No. 2, and left instructions that the loads be reduced. We have found (Finding 9) that the second floor of Building No. 2 was at this time overloaded in violation of Paragraph 16 of the lease. The Inspector's instructions to reduce the floor loads were not complied with. Defendant did endeavor to obtain from The Container Company a schedule of permissible floor loadings, but the information was not transmitted to defendant until after the second floor had collapsed on March 2. The collapse was caused by the overloading. Defendant promptly made arrangements to have the bulged-out wall braced, and on March 4 shoring timbers were put in place. On March 6, fire broke out under the collapsed part of the building, burned for several days, and consumed the major portion of the structure.

The sagging of the second floor broke a section of iron electric wiring conduit; the broken conduit cut through the insulation of the wires it contained. An electric arc resulted causing the fire. The conduit contained a two-wire circuit. One wire of the circuit contained a fuse. After the collapse and before the fire, this fuse was removed. Where only one wire of such a circuit contained a fuse, the National Electrical Code and local ordinance required that the other be grounded. Defendant contends that the other wire was not grounded and that the fire could not have occurred if it had been. Plaintiffs contends that the other wire was grounded. The evidence on this question is inconclusive. Plaintiffs suggest that the wiring added to the plant by Cardinale was a factor in producing the arc. The Container

692

Company made no warranties or covenants as to the condition of the premises. The defendant specifically covenanted that it had examined the premises and was familiar with the structures. Also defendant inspected the property shortly after the term began and required The Container Company to correct certain matters to defendant's satisfaction. We find that there is insufficient evidence that the permanent wiring system was defective or that any factor producing the arc and the fire is chargeable to The Container Company.

■ The case is in contract, not in tort. Defendant undertook not to overload and to repair immediately any damage caused by loading. The building was overloaded. This violated a covenant of the lease. It might also have been negligent. We are not called upon to decide whether in a tort action before a proper tribunal defendant could successfully defend that the negligence was that of an independent contractor not attributable to defendant. We do decide that defendant could not escape its contract obligations under the lease by putting Cardinale in possession whether as agent or as independent contractor.[1] There is no contention that defendant attempted to assign its obligations to Cardinale or that such assignment, if attempted, could have been effective without The Container Company's assent. Aside from this, the defendant is hardly in a position to contend that Cardinale was not its agent. For defendant agreed in the lease not to permit the premises to be used by anyone other than itself, its sublessee, or the agents or servants of itself or its sublessee.

■ A lessee is not liable under a covenant to repair if the damage was caused by the lessor's negligence or by a defect which it was the lessor's duty to repair or which the lessor created.[2] In a tort action, contributory negligence is an affirmative defense and the burden of proving it is on the defendant.[3] Likewise in this case, if the fact that the wiring was defective would relieve defendant from liability under the covenant, then the burden of establishing that fact, or the risk of nonpersuasion that it was a fact, is on the defendant.[4] The defendant having failed to prove that the original wiring was defective, we do not reach the question of whether defendant would still be liable if it had been. We find that the damage resulted from the overloading of the second floor in violation of the lease. This is the only proven proximate cause of the fire.

■ Defendant covenanted not to overload and to repair damage caused by loading. The damage involved here was caused by loading. We hold that defendant is liable, under Paragraph 16 of the lease, for the cost of repairing or rebuilding the destroyed structure. By the common law rule a tenant, having covenanted to repair, must rebuild after destruction by fire.[5] It appears that this is also the law of New Jersey.[6] Understandably enough,

1. See Continental Insurance Co. v. I. Bahcall, Inc., D.C., 39 F.Supp. 315.

2. Kaplan v. Flynn, 255 Mass. 127, 150 N.E. 872, 45 A.L.R. 6; Stevens v. Schweizer, 94 Misc. 646, 158 N.Y.S. 465; Citron v. Cohen, 36 Times L.R. 560. See also Belsky v. Loeffler, 120 N.J.Eq. 352, 185 A. 362, affirmed 122 N.J.Eq. 422, 194 A. 164. But cf. Manchester Bonded Warehouse v. Carr, [1880] 5 C.P.D. 507, where a tenant was held liable under his covenant to repair although the building collapsed as a result of defects existing at the time the lease was made.

3. Washington & G. R. Co. v. Gladmon, 15 Wall. 401, 82 U.S. 401, 21 L.Ed. 114; Osbun v. De Young, 99 N.J.L. 204, 122 A. 809.

4. See Townsend v. Rosenblum, Sup., 113 N.Y.S. 1029; and Taylor v. Campbell, 123 App.Div. 698, 108 N.Y.S. 399.

5. 45 A.L.R. 13, 39.
 Dermott v. Jones, 2 Wall. 1, 69 U.S. 1, 17 L.Ed. 762; Schmidt v. Pettit, 8 D.C. 179, 1 McArthur 179. See also United States v. Bostwick, 94 U.S. 53, 69, 24 L. Ed. 65.

6. See Allen v. Fisher, 66 N.J.L. 261, 49 A. 477; and Ashby v. Ashby, 59 N.J. Eq. 547, 46 A. 522. However, New Jersey holds that where a lease contains both a covenant to repair and a covenant to deliver up in as good condition as when received, reasonable wear and tear and damage by accidental fire excepted, the exceptions in the latter covenant

courts have sought to avoid the common law rule where the fire resulted without fault on the part of the lessee.[7] But we are not at all reluctant to apply it in a case where the damage resulted from a violation of the lease and where the covenant to repair expressly contemplates damage resulting from that type of violation. Overloading having caused the damage, the United States is liable for the cost of restoration or rebuilding under its covenant not to overload and to repair damage caused by loading.

The Container Company is suing in its own behalf and for the use of certain insurance companies. All of the leased premises, including Building No. 2, were covered by an insurance policy issued by Firemen's Mutual Insurance Company. The policy was a blanket one covering all properties of Continental Can Co., Inc., and affiliated companies. The Container Company is a wholly owned subsidiary of Continental Can Company, Inc.; under the policy its Rockaway property was insured in the amount of $445,000. Seven other insurance companies each assumed a percentage of the insurance as set out in Findings 3 and 20. The eight companies are members of Associated Factory Mutual Fire Insurance Companies, a voluntary association which makes appraisals, adjustments, settlements of fire losses, and performs general engineering and laboratory services for the member companies. The policy obligates the insurer to provide insurance " * * * to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss * * *"

It is also provided that "This policy also covers expense of removal from the premises containing the property insured hereunder of debris remaining after any loss hereby insured against, except that there shall be no liability assumed for the expense of removal of (1) any foundations, (2) any building or part thereof, the removal of which is required by any ordinance or law regulating construction or repair."

 Claim having been made on the policy, the Associated Factory Mutual Fire Insurance Companies employed the W. J. Barney Corporation to estimate the cost of repairing the damage. The Barney Corporation's estimate, which was in the form of a firm offer to do the work, was that it would cost $164,056 to restore Building No. 2 and $12,000 to remove the debris. Because of disagreement between the insured and the insurer, the Barney Corporation made two subsequent estimates which raised the estimate to restore the building to $200,422 and the estimate for removal of debris to $17,000. We find that the evidence fails to establish the necessity for incurring this additional expense and that the cost of restoring the damaged part of Building No. 2 was $164,056 and the cost of removing debris left by the fire $12,000. The insurer paid, however, on the basis of the larger estimates as set out in Finding 23. The insurers and the insured agreed among themselves that the cost of restoration should be depreciated 40%. We find that this is a reasonable and proper depreciation figure. We hold that the damages for which defendant is liable to its lessor are to be measured by the reproduction cost of the destroyed part of the building less 40% depreciation, which we compute to be $98,433.60. We hold further that a lessee's liability to repair fire damage includes a liability to pay for necessary removal of debris left by the fire. Defendant is,

apply also to the former, Allen v. Fisher, supra; New Jersey has also indicated that damage by accidental fire is within an exception of damage by the elements, McNeely v. Gasko, 130 N.J.L. 319, 32 A. 2d 727. Paragraph 17 of the lease in the present case contains an exception of damage by the elements which a New Jersey court might well hold applied also to Paragraph 16. However, there is no authority holding that fire caused by lessee's negligence or lessee's violation of a term of the lease is within an exception of damage by the elements.

7. 45 A.L.R. 13, 39–45.

therefore, also answerable in damages for the cost of removing debris. As set out in Finding 25, we find defendant's total liability to be $110,433.60.

Defendant contends that if it is liable, its liability does not extend beyond the market value of the property destroyed by fire. There is wide divergence between the parties on this matter, defendant placing market value at $80,000 and plaintiffs at $197,000. We have found that, on the basis of market value, the value of the destroyed portion of Building No. 2 was approximately $98,335. Although we hold that market value is not the measure of damages in this case, we note that the market value of the destroyed property is approximately the same as the cost of repairing it. Our judgment is given under Paragraph 16 of the lease which obligates defendant to repair; we have found that the cost of repairing is $110,433.60. If lessee had been liable under Paragraph 17 —which we do not decide—the measure of damages would be the same. The cost of restoring the premises to "their present condition" is the same as the cost of repairing the fire damage.

▇▇▇▇ Defendant contends that where the lessor has insured against fire damage, the lessee is not liable under a restoration clause for damage from fire. Defendant cites us no cases on this point and we find the argument ingenious but unconvincing; however, we do not pass on it since our judgment here is not predicated on the restoration clause in Paragraph 17 but upon the repair clause in Paragraph 16. We do hold that defendant's obligation to The Container Company under Paragraph 16 is not affected by the fact that The Container Company had insurance on the property.[8]

▇▇▇▇▇ The Container Company recovers, however, for the use of the insurance companies.[9] The policy provided that: "This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company." and also that: "It is mutually understood and agreed that in case of loss under this Policy the assured shall on demand subrogate to this Insurance Company its right of recovery against any Government or political subdivision thereof, municipal or private corporation, association, partnership or person; but it is understood that this company shall not acquire by subrogation any right of recovery except such rights as the assured has not expressly waived in writing prior to the occurrence of the loss."[10]

The insurers, by paying for the damage, became subrogated to the insured's contract claim against the United States.[11]

8. Chicago, St. Louis and New Orleans R. R. v. Pullman Southern Car Co., 139 U.S. 79, 11 S.Ct. 490, 35 L.Ed. 97; Carney v. Morrison, 223 App.Div. 244, 228 N.Y.S. 308; Brewster v. Silverstein, Sup., 133 N.Y.S. 473.

9. Recovery may be had in this court for the use of insurance companies. United States v. American Tobacco Co., 166 U.S. 468, 17 S.Ct. 619, 41 L.Ed. 1081, affirming 32 Ct.Cl. 207; Nashville Industrial Corporation for Use of Springfield Fire & Marine Ins. Co. v. United States, 69 Ct.Cl. 443; Shaw v. United States, 8 Ct.Cl. 488.

10. However, it has been held that the right of subrogation would exist even without such stipulations in the policy. St. Louis, Iron Mountain and Southern Ry. v. Commercial Union Insurance Co., 139 U.S. 223, 11 S.Ct. 554, 35 L.Ed. 154, Phoenix Insurance Co. v. Erie and Western Transportation Co., 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873. A New Jersey court has said that the right of subrogation, "if it exists, rests not in the contract, but results from the circumstances of the case." See Employers' Fire Insurance Co. v. Ritter, 112 N.J.Eq. 418, 164 A. 426, 428. This is also the rule in Rhode Island, where this insurance policy was entered into, at least where the policy does not condition the right of subrogation on the insurer's making a claim, at or before the time it pays the loss, that the fire was caused by the act or neglect of some third person. Merchants Fire Assurance Corporation v. Hamilton Co., R. I., 69 A.2d 551.

11. Lessor's insurer is subrogated to lessor's rights against the lessee under a repair clause. Darrell v. Tibbits, [1880] 5 Q.B.D. 560. In England an insurer is also subrogated to the insured's rights under an executory con-

The defendant's liability to The Container Company we have determined to be $110,433.60. Since this amount is less than that paid by the insurers, the entire recovery is for the use of the eight insurers, the share of each company to be computed in accordance with the percentages set out in Finding 20.

tract of sale. Castellain v. Preston, [1883] 11 Q.B.D. 380. Vance says that in the United States subrogation is limited to a tort or contract liability arising out of the loss and does not extend to a contract liability merely collateral to the loss; but he implies that a contract liability is not merely collateral where, as in the instant case, the insurance policy and the covenant in the lease cover the same subject matter, i. e., loss by fire. Vance, Handbook of the Law of Insurance, p. 425. Some American courts have not allowed subrogation to contract claims. Transportation Mutual Insurance Co. v. Southern Scrap Metal Material Co., 181 La. 1028, 160 So. 800; Plate Glass Underwriters' Mutual Insurance Co. v. Ridgewood Realty Co., 219 Mo.App. 186, 269 S.W. 659. But the general rule is that an insurer is subrogated to the insured's right of indemnity from a third party in contract as well as in tort. Chicago, St. Louis and New Orleans R. R. v. Pullman Southern Car Co., supra; Hall & Long v. Nashville & C. R. Co., 13 Wall. 367, 80 U.S. 367, 20 L.Ed. 594; Continental Insurance Co. v. I. Bahcall, Inc., supra; F. H. Vahlsing, Inc., v. Hartford Fire Insurance Co., Tex.Civ.App., 108 S.W. 2d 947. Subrogation has been held to occur where the defendant is made absolutely liable to the insured by statute, Pittsburgh, Cincinnati, Chicago & St. Louis Ry. v. Home Insurance Co., 183 Ind. 355, 108 N.E. 525, Ann.Cas.1918A, 828, but not when the statute gives the defendant the benefit of insurance on the property, Boston & Maine R. R. v. Hartford Fire Insurance Co., 252 Mass. 432, 147 N.E. 904; or by operation of law, Pentz v. Receivers of Aetna Fire Insurance Co., 3 Edw.Ch., N. Y., 341, reversed on other grounds, 9 Paige, N. Y. 568. Bailor's insurer, having paid for destruction of the property by an unexplained fire while in the possession of the bailee, is subrogated to the bailor's rights against the bailee. National Fire Insurance Co. v. Mogan, 186 Or. 285, 206 P.2d 963. This court has held that an insurer, having paid under its policy, is subrogated to the insured's claim against the United States under the latter's contract to indemnify the insured against loss or damage. Nashville Industrial Corporation v. United States, supra.