**NORTH SLOPE TECHNICAL, LTD., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–757C.**

United States Court of Federal Claims.

Dec. 31, 1992.

Michael E. Kreger, Anchorage, AK, for plaintiff.

Domenique Kirchner, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and Thomas W. Petersen, DC, for defendant.

## OPINION

BRUGGINK, Judge.

After oral argument on the parties' cross-motions for summary judgment and on defendant's motion to dismiss, the court granted the motion to dismiss the insurance carrier as a named party, and denied plaintiff's motion for summary judgment. *See* Order of December 4, 1992. This opinion deals with the defendant's motion for summary judgment. The motion raises the question of whether a contractor's right to recover against the Government is diminished to the extent the contractor has been paid for the loss through a builders' all-risk insurance policy that it elected to obtain on its own initiative. More generally, the issue is whether the contractor can sue here for the use and benefit of its insurance company. We find that it can.

## BACKGROUND

The contract at bar was executed in 1984. It involved the construction of an extension to a utilidor and repair work to an existing utilidor, all at Eielson Air Force Base, near Fairbanks, Alaska. Before the contract work had been completed, but after the point at which North Slope contends the Government took over beneficial use and occupancy, there was flooding and freezing within the utilidor. Damage resulted. North Slope contends it was instructed to replace certain equipment, repair damage, and maintain heat within the utilidor. North Slope did the work but made a claim for an equitable adjustment in the amount of $575,984.12. It contended that the Government's defective design caused the freezing and subsequent damage.

The contract contains the standard defective design and equitable adjustment clauses. It also contained a special provision that required the contractor to maintain certain types of insurance, such as workmen's compensation and various liability coverages, but there was no requirement that the contractor purchase builder's all-risk insurance. North Slope purchased the insurance coverages called for by the contract, but it also obtained builder's all-risk coverage through Alaska Pacific Assurance Company ("Alaska Pacific"). It is undisputed that the policy names North Slope as the insured, not the Government, and that North Slope paid the premiums and did not seek reimbursement for those premiums under the contract, which was for a fixed price. Nor has North Slope sought to recover the premium as part of its equitable adjustment claim.

North Slope initially paid a premium of approximately $12,000 for the builder's risk insurance. The policy contains standard language subrogating the insurance company to any rights of the insured in the event of a loss. It is undisputed that if

there had been no right in the insurance company to pursue the United States in the event of a loss allegedly occasioned by improper design, i.e., if the carrier was insuring against government-caused design defects, the premium would have been at least ten times as expensive.

Alaska Pacific paid North Slope the entire amount it was seeking from the Government. This action was then commenced in the names of both the contractor and of the insurance company. The court granted defendant's motion to dismiss Alaska Pacific as a named plaintiff, because it is not in privity with the Government and hence has no standing to sue in its own name. The contractor is in privity with the Government, but has been paid on its policy. The Government now argues that the contractor cannot establish a loss, and thus has no claim.

### DISCUSSION

The Government's attempt to insinuate itself into the position of de facto insured under North Slope's builder's all-risk policy draws support from one decision. There is language in *Winston Bros. Co. v. United States*, 198 Ct.Cl. 37, 458 F.2d 49 (1972), that is helpful to the Government's argument, but a close examination of that decision, as well as other controlling precedent before and after it, reveals that *Winston* is best confined to its circumstances.

In *Winston,* the contractor had been building a tunnel for the Corps of Engineers. There was a cave-in, resulting in delay and in destruction of some of the contractor's equipment. The board of contract appeals found that the problem was caused by the Government's defective design of the tunnel and awarded Winston delay damages and the costs of some of its equipment. It denied a reimbursement claim as to other items of equipment, however, because their loss was covered by insurance, the premium for which was presumably incorporated in the bid amount.

The latter issue went before the Court of Claims.

The Court of Claims affirmed the board. It began its analysis with the observation that recoveries under the contract clauses should be limited by the sense of what is "equitable." Adverting to an earlier decision concerning the quantum of recoveries, *Bruce Construction Corp. v. United States,* 163 Ct.Cl. 97, 324 F.2d 516 (1963), the court pointed out that the goal of an equitable adjustment should be to make the contractor whole. If the contractor had been reimbursed by insurance, then it was whole and had no equitable basis for complaint. Perhaps the same would have been true if the contractor had chanced upon a winning lottery ticket while walking through the construction site.[1]

The court was not entirely happy with the force of its reasoning, however, because it concedes that the contract at issue (of which apparently the court did not have a copy) may have been a general policy, maintained as part of the overall cost of performing all the contractor's business, not just the tunnel project. The real issue, the court concluded, was determining which one of the parties to the construction project had assumed the risk of loss. One of the indicia that it was the contractor that had assumed the risk of damage to equipment was contract clause 8, which called on the contractor at all times to "protect and preserve all materials, supplies and equipment of every description." 198 Ct.Cl. at 43, 458 F.2d at 52.

A more telling indicia to the court was the applicable regulation dealing with the allowability of insurance premiums and with certain questions of indemnification. As the court points out, 32 C.F.R. § 15.-205–16 (1961) deals with allowability when certain costs items become an issue, as, for instance, in change orders, termination settlements, or other instances of retrospective pricing. Even though allowability was not an issue in *Winston,* the court concluded that a fixed price contractor,

---

1. The court neatly dispatched plaintiff's argument that it was contractually bound to reimburse the insurance company if it recovered from the party that caused the damage, in this case, the Government. The court logically pointed out that, if the court permitted it no recovery, the contractor was under no obligation to turn over any proceeds.

taking all these provisions together, would realize that the Government intended the Cost Principles ... to apply in just about any situation, as appropriate, when a contract price was to be determined or adjusted in light of the allowability of an item of cost. Thus, for example, in case of a change order or termination settlement under the contract here involved, the contractor would expect the Cost Principles to govern.

198 Ct.Cl. at 45, 458 F.2d at 53. It is not clear what link the court saw between the claim in *Winston* and allowability of insurance premiums. The plaintiff in that case was not seeking to recover premiums and thus there would be no occasion to resort to § 15.205–16. In any event, once having its attention called to that provision, the court held the following:

> The contractor looking at § 15.205–16 would know that insurance maintained in connection with the general conduct of the business was an allowable cost, with type and extent of coverage to accord with sound business practice, and premium rates to be reasonable. Actual losses which could have been covered by permissible insurance were unallowable unless expressly provided in the contract.
>
> This appears to give the construction contractor a strong incentive to cover his equipment by insurance, for if he fails to do so his losses of such equipment are nevertheless unallowable.... Prospectively considered, it would seem wholly unreasonable for the Government to put forth such regulations, unless it intends that the insurance the contractor obtains will protect both parties in case of loss, including, as here, a loss caused by defective Government specifications. It would be absurd for the Government to bear the premium and not get any protection.

It can be argued that the court was inadvisedly mixing the accounting concept of allowability with the liability issue of risk of loss. In any event, it is obvious

that the last sentence in the first paragraph quoted is critical to the court's analysis. The regulations in question provide at subsection (a)(3) that "[a]ctual losses which could have been covered by permissible insurance ... are unallowable unless expressly provided for in the contract...." [2] What makes *Winston* inapposite for the case at bar is that this same language had been removed from the comparable regulations applicable to the present contract. The paragraph applicable to the current contract reads, "[a]ctual losses are unallowable unless expressly provided for in the contract...." 32 C.F.R. § 15–205.-16(a)(4) (1984).

The *Winston* court did not mention earlier decisions of the United States Supreme Court and of the Court of Claims which appear to support a contrary view as to the effect of an insurance recovery, thus strengthening the conclusion that *Winston* is unique to its facts. In *Container Company v. United States*, 116 Ct.Cl. 706, 90 F.Supp. 689 (1950), the court was confronted with the argument that the Government should not have to bear the risk of loss of fire damage to premises it leased from the plaintiff, because the plaintiff had insurance coverage. The court rejected the argument, holding that the lease agreement controlled the allocation of risk, and that the loss was traceable to the Government's overloading of electrical circuits, something it had contracted not to do. The court went on to state:

> Defendant contends that where the lessor has insured against fire damage, the lessee is not liable under a restoration clause for damage from fire. Defendant cites us no cases on this point and we find the argument ingenious but unconvincing; however, we do not pass on it since our judgment here is not predicated on the restoration clause in Paragraph 17 but upon the repair clause in Paragraph 16. We do hold that defendant's obligation to The Container Company under Paragraph 16 is not affected by the fact

---

**2.** The court did not discuss why the phrase "unless expressly provided for in the contract" is not at least implicated by the defective specifica-tions clause or the change order clause of the contract.

that The Container Company had insurance on the property.

116 Ct.Cl. at 721, 90 F.Supp. at 694.

Among other cases, the court in *Container Company* cited *Chicago, St. Louis and New Orleans R.R. v. Pullman Southern Car Co.*, 139 U.S. 79, 11 S.Ct. 490, 35 L.Ed. 97 (1891). The subject of that case was responsibility for fire damage to Pullman sleeping cars. The cars had been leased to the railroad, and the court found that the railroad accepted responsibility under the contract for unexplained fire loss. Pullman had been reimbursed for the damage to its cars by its own insurance carrier. This latter fact was held to be of no consequence in Pullman's suit against the railroad:

> We are of the opinion that the obtaining of insurance by the plaintiff, the collection of $19,000 in full settlement of its claim against the insurance companies, and the agreement between it and them for the bringing of this action for their joint benefit, were matters with which the railroad company had no concern, and cannot affect the determination of this case.... Upon payment of the loss ... the insurance companies were subrogated to the rights of the insured, and could, in the name of the insured, or in their joint names, maintain an action against the railroad company for indemnity, if that company was liable to the insured for the loss of the cars. The acceptance of a given amount from the insurance companies in full discharge of their liability, did not affect the right of the plaintiff to recover from the railroad company the whole amount of the loss for which the latter was responsible under its contract.

139 U.S. at 87, 11 S.Ct. at 493.

To similar effect is *United States v. American Tobacco Co.*, 166 U.S. 468, 17 S.Ct. 619, 41 L.Ed. 1081 (1897). There, the tobacco company was suing the Treasury Department in order to redeem the value of tobacco revenue stamps that it had previously purchased, but which had been destroyed in a fire. The Government defended, in part, by asserting that the plaintiff's loss had been reimbursed by its insurance carriers, and that it therefore had suffered no real loss. The Court disagreed, concluding that, under the insurance contracts at issue, the insurers were subrogated to the rights of the tobacco company, and that they had a right of action against the Government that could be maintained in the name of the insured. The equities, it found, lay with the insurance companies:

> Unless, therefore, the Government repaid the value of these stamps so destroyed, or provided other stamps in lieu thereof without any further payment, the Government would be in the position of one who retained money to which it had no equitable right. It would be no answer to that fact to show that some other person had reimbursed the claimant ... That would not alter the position of the Government.... Having received the premiums [the insurance companies] had the right to fulfil their contract, and the tobacco company after such payment might still ask the Government to pay it the value of the stamps in order that it might thereafter repay the insurance companies. The Government loses nothing by payment in such case. It simply repays money which it has no equitable right to retain.

166 U.S. at 478, 17 S.Ct. at 623.

In 1977 the Court of Claims had an occasion to consider *Winston* in *S.W. Aircraft Inc. v. United States*, 213 Ct.Cl. 206, 551 F.2d 1208 (1977). That suit involved the loss of a helicopter leased by the Forest Service from a prime contractor, which in turn subcontracted with the plaintiff. The subcontractor had been paid for the loss (along with the owner of the helicopter) pursuant to an insurance policy. One of the Government's arguments was that under *Winston*, it "automatically gains the benefit of any general insurance carried by a contractor when the cost of that insurance is paid by the Government." 213 Ct. Cl. at 210, 551 F.2d at 1210. The court disagreed. It distinguished *Winston* in two respects. First, it found that the Government had not in fact paid for the insurance by simply paying the contractor for the use of the helicopter. The court point-

ed to evidence in the record that the relatively low cost of the insurance premium was a reflection that the parties assumed that the Government had assumed of the risk of loss to the helicopter under the precise circumstances of its loss. Second, the court concluded that the terms of the contract supported the parties' assumptions as to risk of loss. The court held that "*Winston* is inapposite; the Government did not pay for insurance covering this type of helicopter accident; [and] plaintiff's receipt of insurance proceeds does not bar this suit." 213 Ct.Cl. at 211, 551 F.2d at 1211.

In *Container Company, Pullman Southern Car Co., American Tobacco Co.,* and *S.W. Aircraft,* the courts permitted an action to be brought for the use and benefit of the real party in interest, an insurance company that was not in direct privity of contract with the defendant. A similar practice has developed in this court with respect to subcontractors. Although subcontractors do not contract directly with the Government, prime contractors are permitted to sue for the benefit of subcontractors. *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813–14 (Fed.Cir.1984). Sureties also have been allowed to pursue subrogation claims in their own name to a contract balance, after default by the contractor and notice by the surety. *See Ransom v. United States,* 900 F.2d 242, 245 (Fed.Cir.1990); *Universal Surety Co. v. United States,* 10 Cl.Ct. 794, 796–98 (1986).[3]

There is, consequently, no general rule prohibiting the contractor from suing for the use and benefit of an insurer which has absorbed the loss. Nor does the Government step into the shoes of the insured and reap the benefit of the insurance coverage, absent an agreement between the parties that it can do so. In the case at bar, the government has assumed the risk of loss caused by defective specifications. There is no contractual support for the contention that the parties understood the builder's all-risk insurance to be for the Government's benefit. The Government's payment of the contract price did not make it the beneficiary of the policy. It is clear from the relatively low premium that the contractor and the insurance company entered into their agreement on the assumption that the insurer would be subrogated to any claim for reimbursement that the contractor could assert against the Government. Under these circumstances, the action can proceed in the name of North Slope for the use and benefit of Alaska Pacific.

## CONCLUSION

Defendant's motion for summary judgment is denied. The parties are directed to file a joint status report on or before January 25, 1993 proposing a schedule for pretrial submissions and trial.

---

**3.** Although there are limitations on a surety's right to bring an action in its own name, those limitations are not applicable here, where the suit is prosecuted in the name of, and with the cooperation of, the contracting party.