Whitaker, Judge,
delivered the opinion of the court:
The plaintiff sues under a special jurisdictional act to recover damages for injury to the steamboat Senator Cordill and its cargo on February 5, 1934, as a result of the boat’s striking a submerged wicket of United States Dam No. 14 on the Ohio River.
The jurisdictional act (49 Stat. part 2, c. 559, p. 2316) confers jurisdiction on this court to render judgment “for damages for injury to the steamboat Senator Cordill and its cargo on February 5, 1934, when such steamboat struck a submerged wicket of United States Dam Numbered 14, on the Ohio River and sank.”
The plaintiff claims damages in the total sum of $78,609.75 made up of the following items:
Value of boat_$50,000.00
Earned freight- 820. 06
Accrued wages due the officers and crew_ 388.65
*386 Cargo lost_ $5, 636.42
Supplies on board the vessel- 1,944. 58
Cost of salvaging- 1,673. 66
Charter hire of a vessel of like capacity for the time required to construct a new vessel- 18, 000. 00
Amount due for advancement for repairs- 146.38
The defendant admits that it is liable for the injury, and the only question before us is the amount of the damage to which the plaintiff is entitled.
1. Value of boat. — A commissioner of this court has found that the vessel was a total loss. While the evidence on this point is not altogether satisfactory, we think it is substantially correct to say that she was a total loss. The question, therefore, is the market value of the vessel at the time of the accident. The commissioner has fixed this value at $15,000.
Again the evidence is conflicting. The plaintiff introduced six or seven witnesses, all but two of whom testified that her value was $50,000. Of the other two, one fixed the value at from sixty-five thousand to seventy thousand dollars, and the other at from forty thousand to forty-five thousand dollars. Among the witnesses fixing her value at $50,000 was a Mr. Lepper, who was an appraiser for an insurance company engaged in the business of insuring vessels. On the other hand, the plaintiff in his sworn petition filed in the limitation of liability proceedings fixed her value before the accident at $20,000, and in his income tax return he claimed a loss on account of the accident of $8,500.
Just a few months prior to the accident he bought the boat at a marshal’s sale for $7,500, and since then he spent a certain amount of money on putting her in repair. Just what this amount was does not definitely appear. The plaintiff kept no record of what he had spent, although he seems to have been a man of large and varied interests and to have maintained an accurate account of his other business ventures. He testified, “I think the cost of the work done.there and then at Point Pleasant was between seventy-five hundred and eighty-three hundred dollars.”
Another indication of the value of the boat is that the plaintiff agreed to turn over to her master and another a *387 forty percent interest in her, or in a corporation to be organized to operate her, for $4,000.
The boat has not been repaired, apparently because its purchasers did not think it was worth the cost. Several-estimates were made of the cost of the necessary repairs. One of plaintiff’s witnesses fixed this cost at from nine thousand to twelve thousand dollars, and another at from eighteen thousand to twenty thousand dollars. Its purchasers in the limitation of liability proceedings took it to-the Dravo Corporation, which is engaged in the business of repairing marine vessels, for an estimate of the cost of repairing it. This estimate was $7,800. Objection was made to the introduction of this testimony because the estimate was not made by the witness. But he testified that it was made in the regular course of business of the Dravo Corporation and that he had found it in the files of the company in a place where such an estimate would have been kept. The men who made the estimate were not available. Under such circumstances, it was probably admissible. But be this as it may, one of plaintiff’s witnesses testified, as we have stated, that the cost of the necessary repairs would be from nine thousand to twelve thousand dollars. We take this figure to be correct. Since the owners were unwilling to spend this much money on it, it could not have been worth anything like $50,000.
No doubt the price paid at the marshal’s sale, without more, is not determinative of her value, but, taken in conjunction with the other things that we have mentioned, it indicates that the value of $15,000 as fixed by the commissioner is approximately correct. We hold that its market value at the time of accident was $15,000.
2. Earned freight $820.06. — The plaintiff claims $820.06 as the amount of freight charges on the cargo on the trip on which the boat sank. The plaintiff is entitled to recover the amount of these charges, less the expenses of the trip. But there is no proof as to what these expenses were. For this reason this item must be disallowed.
3. Wages of $888.65 accrued prior to the time of the accident. — Plaintiff is clearly not entitled to this item.
*388 4. Cargo loss! $5@3-6.1$. — Plaintiff claims the sum of $5,636.42 for the value of the cargo loss as a result of the sinking. The amount is not contested by the defendant, but it says there is no liability for any amount because the loss was not due to the plaintiff’s negligence, and plaintiff; therefore, is not liable to the owners of the cargo; and because, too, the plaintiff filed a limitation of liability proceeding, and in this proceeding was discharged from any and all liability on account of the accident.
It is, however, well settled that a shipowner may sue in his own name for the benefit of the owners of the cargo to recover damages thereto as a result of the negligence- of another. The Beaconsfield, 158 U. S. 303, 305.
The limitation of liability proceedings instituted by the plaintiff cannot affect the right of the cargo owners, or the plaintiff for them, to recover from another who was responsible for the accident. The limitation of liability proceedings did no more than exempt the plaintiff from liability for the accident; they in no way affected the liability of this defendant therefor. The Act of Congress specifically confers jurisdiction on this court to entertain “the claim of John W. Hubbard * * * for damages for injury to the steamboat Sienator Cordill mid its' car god (Italics supplied.)
The plaintiff is entitled to recover under this item the sum of $5,636.42.
5. Supplies on hoard the vessel $1,944.58. — The proof shows that before leaving Pittsburgh the plaintiff, or his agents, had purchased various equipment, such as dining room' supplies, wash basins, and the like, at a cost of $1,944.58. While this was not a part of the boat, its loss was a consequence of the injury to the boat and plaintiff under the jurisdictional act is entitled to recover it.
6. Cost of salvaging $1,67§M. — This is made up of the following items:
Howard Morris — Transportation, and telephone_$78.90
Bari Cooper — Gasoline boat and barge (lightering)_ 374.25
Fred Hoyt- — For lumber for raising boat_113.10
Wages to officers and crew while the boat was being raised— 626.45
Captain Noll — Services and supplies to crew___ 480.96
*389 The first two items were expended in connection with the salvaging of the cargo as well as the boat. They are clearly allowable.
Captain Noll’s bill of $480.96 is made up of food and lodging, for the officers and crew and transportation to and from his home to the Senator Cordill while the boat was being raised. These items are not allowable.
We think the plaintiff is entitled to recover the cost of raising the boat, although she'was a total loss. When she was lying on the bottom of the river plaintiff did not know that she was a total loss. It was necessary for her to be raised and examined before this could be ascertained. This was done in good faith. In such case the authorities hold that the cost of raising her may be recovered. The Reno, 134 Fed. 555. Cf. The Falcon, 19 Wallace, 75. See also cases cited in note 76 in 11 C. J. 1207. Cf. The Shady Side, 21 Fed. Cas. 1137, 17 Blatchf. 132, an opinion by Circuit Justice Waite. This cost consists of lumber purchased and wages of officers and crew. The cost of the lumber used in raising her was $113.10. However, wages to officers and crew are claimed from February 5,1934 to March 20, 1934; but the testimony shows that the boat was raised in about 20 days. Shortly thereafter it was possible to tell whether or not she' was worth repairing. The plaintiff is not entitled to recover for wages for officers and crew for a period longer than 30 days after the accident. This amounts to the sum of $437.06.
Plaintiff .is entitled to a gross amount of $1,003.31 for salvaging the cargo and the boat. From this amount there must be deducted, however, the sale price of the boat, $325.00. The Shady Side, supra. This leaves a balance due for these items of $678.31.
7. Charter hire of a vessel of like capacity for the time required .to construct .a new vessel $18,000.00. — It is well settled that where there has been a total loss, the plaintiff is not entitled to recover for charter hire. The Umbria, 166 U. S. 404, 422.
8. Amount d/m for advancement for pepairs $140.88.— This is a sum due for repairs on the vessel made just before the accident. This, of course, enhanced the value of the *390 vessel, tlie full value of which, plaintiff has been allowed. Plaintiff is therefore not entitled to this item.
It results that plaintiff is entitled to recover the total amount of $23,259.31. It is so ordered.
Littleton, Judge; Green, Judge;' and Whaley, Chief Justice, concur.