S. W. AIRCRAFT INC., and Western Helicopter Services, Inc.,

v.

The UNITED STATES.

No. 37–75.

United States Court of Claims.

March 23, 1977.

John L. Langslet, Portland, Ore., attorney of record, for plaintiff. Martin, Bischoff, Templeton & Biggs, Portland Ore., of counsel.

Anthony Thompson, Washington, D.C. with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D.C., for defendant. Donnie Hoover, Washington, D.C., of counsel.

Before DAVIS, KASHIWA and KUNZIG, Judges.

## ON PLAINTIFFS' AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge.

This case comes before the court on cross-motions for summary judgment. Principally at issue is the interpretation of a "risk of loss" clause in a contract by which Western Helicopter Services, Inc. (Western) subleased a helicopter owned by S. W. Aircraft, Inc. (Aircraft) to the United States Department of Agriculture for use by the Forest Service. We resolve the ambiguity in favor of plaintiffs (Western and Aircraft) and therefore, grant their motion for summary judgment.

Facts leading to this law suit start with the agreement of June 28, 1972 between the Forest Service and Western providing for rental by the Government of aircraft (including helicopters) for use in firefighting operations. Pursuant to this agreement, Western leased an Aircraft-owned Bell Helicopter to the Forest Service.

Thereafter, on June 21, 1973, while circling a suspected fire location, the helicopter crashed, caught fire and was destroyed. Prior to the crash, the helicopter was flying below five hundred (500) feet. A spotter plane was also circling above the fire, and the aerial observer in the plane (a Forest Service employee) was directing the helicopter to the fire at the time it crashed.

The helicopter was jointly insured by the owner (Aircraft), and Western. Subsequent to the crash, the insurance company, via the loan receipt method,[1] paid the plaintiffs its maximum liability under the policy, $38,000.[2] Plaintiffs filed this suit on February 10, 1975 seeking to recover the value of

---

1. Under this method of payment, the named insureds are not actually paid by the insurance company, but merely *lent* an amount "equal to its loss 'repayable only in the event and to the extent of any net recovery' in any legal action brought in furtherance of claims, for liability for the damage covered by the loan agreement." *Winston Brothers Co. v. United States*, 458 F.2d 49, 51, 198 Ct.Cl. 37, 42 (1972).

2. The insured value which had been placed on the helicopter by Western, et al., was $40,000. However, there was a $2,000 deductible clause

the helicopter from the Government pursuant to the "risk of loss" provision in the rental agreement.

■ Before addressing the merits of the case, we first consider a subsidiary matter: Defendant's "motion," in its brief, to strike Aircraft as a party plaintiff. Defendant argues that although Aircraft owned the helicopter, the fact that Aircraft is not a party to the contract between Western and the Government and the existence of the lease to Western prevents Aircraft from being a proper party to the suit. We do not find this argument persuasive. Not only was Aircraft the owner of the helicopter and, therefore, entitled, *qua* owner, to bring this action under *N. J. Steam Navigation Co. v. Merchants' Bank,* 47 U.S. (6 How.) 344, 380–81, 12 L.Ed. 465 (1848), but Aircraft is also a named insured on the insurance policy and entitled to bring this action due to the loan receipt payment of the insurance proceeds. *See* note 1; *supra.*

Turning to the merits, the Government urges two principal positions. First, it argues that since the insurance company paid plaintiffs for the helicopter, they have not been injured and, therefore, have no right to recover.[3] To support this position, defendant, citing *Winston Brothers Co. v. United States,* 458 F.2d 49, 198 Ct.Cl. 37 (1972), relies on the theory that because defendant (supposedly) paid the insurance premiums, it should have the benefit of the insurance proceeds.

Alternatively, the Government contends that the contract between Western and defendant placed the risk of loss on the Government *only* when the helicopter pilot was *specifically instructed* to fly within 500 feet of the terrain. As the pilot was not so directed, defendant continues, the risk of loss is on plaintiffs. The Government must only prevail on one issue in order to bar plaintiffs' recovery.

which accounts for plaintiffs receiving only $38,000.

**3.** As a corollary to this position, defendant argues that plaintiffs have been damaged only to the extent of the $2,000 deductible and if found

Plaintiffs counter, arguing initially that the Government is not absolved from liability due to insurance company payments to Western and Aircraft. This position is buttressed with two principal arguments denying that *Winston, supra,* supports defendant's position.

In response to defendant's interpretation of the risk of loss clause, plaintiffs contend the Government is liable for an accident occurring during a flight at less than 500 feet elevation when the pilot's actions (regardless of specific elevation instructions) were directed by an appropriate Government official. As the accident in this case occurred on a Government-directed flight below 500 feet in elevation, defendant should pay. Plaintiffs must prevail on both issues in order to recover.

We hold for plaintiffs. Their receipt of the insurance proceeds does not bar this action. Under the lease agreement, defendant assumed liability for accidents occurring on Government-directed observation or scouting flights when the helicopter was at less than 500 feet elevation.

### Insurance Proceeds

Defendant's first position, that payment of insurance proceeds to plaintiffs bars this suit, is based on the supposition that the Government automatically gains the benefit of any general insurance carried by a contractor when the cost of that insurance is paid by the Government. Defendant cites *Winston, supra,* as support. Plaintiffs, however, argue that *Winston* does not apply.

*Winston* involved a claim by a contractor against the Government for the recovery of the cost of drilling equipment destroyed by a tunnel cave-in. In *Winston,* the contractor was paid by its insurance company via the loan receipt method pursuant to a general insurance policy, the premiums of

liable, this should be the award of damages. *See* note 2, *supra.* As we decide, *infra,* that plaintiffs' receipt of the insurance proceeds does not bar this suit, this argument deserves no further mention.

which had been paid by the Government. The contractor, however, sought recovery from the Government on breach of warranty and equitable adjustment grounds arguing that faulty Government-provided specifications caused the cave-in (and the damage). The court refused to hold the Government liable. It reasoned that since the contract placed the risk of loss on the contractor and the Government had paid insurance premiums for insurance covering the type of accident involved, then the Government should receive the benefit of the insurance proceeds.

■ The case at bar is distinguishable from *Winston* in two important ways. First, the Government did *not* pay for insurance to protect it against liability resulting from helicopter crashes occurring on Government-directed observation or scouting flights at under 500 feet in elevation. The affidavit of the underwriter who prepared the insurance policy (uncontroverted by counter affidavit from defendant) states that the cost of the insurance was less

because of the government's contractual agreement to assume the risk of loss during scouting flights at less than 500 ft. If that provision had not been in the rental agreement . . ., the cost of the insurance would have been higher.

Second, in this case, unlike *Winston,* the *Government agreed to pay* for losses incurred due to accidents on Government-directed observation or scouting flights at less than 500 feet in elevation. *See infra,* "Risk of Loss." Since the Government assumed the risk of loss and did not pay plaintiffs' to cover insurance for this type of accident, there is no reason to give the Government the benefit of the insurance proceeds.[4] *Winston, supra,* 458 F.2d at 54, 198 Ct.Cl. at 46.

Thus, *Winston* is inapposite; the Government did not pay for insurance covering this type of helicopter accident; plaintiff's receipt of insurance proceeds does not bar this suit; and defendant's lead argument fails.

## Risk of Loss

■ We come now to the basic issue of the case. What *exactly* does the following provision of the rental agreement mean?

*LOSS, DAMAGE, OR DESTRUCTION OF CONTRACTOR'S EQUIPMENT*

Loss, damage, or destruction of the Contractor's equipment will be borne by the Contractor, except where caused solely by the negligent acts of Government employees or where the loss, damage, or destruction happens without fault of either the Government or the Contractor under the following conditions:

1. *During flights at elevations within less than 500 feet of the terrain for the purpose of observation or scouting, when directed by the Supervising Officer or by the Forest Officer making the flight.* (emphasis supplied)

Defendant would have us say that the Government assumes the risk only when the helicopter is specifically directed below 500 feet. Plaintiffs, of course, argue that the Government bears the responsibility whenever an accident occurs when the helicopter is flying below 500 feet, even absent specific altitude instructions, if the flight itself is Government-directed.

Basically our task is one of contract interpretation. The provision sets out three requirements which must be met in order to fix liability. The first two are stipulated by the parties: First, that the accident was the fault of neither the Government nor Western. Second, that the accident oc-

---

**4.** We note that in addition to placing the risk of loss on the Government for the type of accident that occurred, the contract does not mention insurance with regard to helicopter accidents. However, the rental agreement *does specify* that insurance against workmen's compensation and/or workmen's liability claims inures to the Government's benefit. This illustrates

that the Government knew how to protect itself against possible claims. Its silence regarding helicopter crashes (especially when helicopters are recognized as one of the most dangerous of normally-used aircraft), paradoxically speaks loudly to the effect that the Government never intended the insurance coverage in issue here to be for its benefit.

curred while the helicopter was flying within "500 feet of the terrain for the purpose of observation or scouting."

It is the third requirement, the degree of Forest Service direction, that is in issue.

The parties stipulate that:

"At the time the helicopter crashed, it was being directed to the site of the fire by Mr. Ty Wood, a United States Forest Service aerial observer (who was a summer employee), but the helicopter was not instructed to fly at any specific altitude."

The question, therefore, is whether Mr. Wood's directions are sufficient under the contract to make the Government liable.

■ We think they are. Ordinarily in interpreting a contract or statute, we look to the plain meaning of the provision in question. *Selman v. United States,* 498 F.2d 1354, 1356, 204 Ct.Cl. 675, 680 (1974); *Guarriello v. United States,* 475 F.2d 640, 642, 201 Ct.Cl. 129, 134 (1973); *Hotpoint Co. v. United States,* 117 F.Supp. 572, 127 Ct.Cl. 402, *cert. denied,* 348 U.S. 820, 75 S.Ct. 32, 99 L.Ed. 647 (1954). But in the instant case, the words are susceptible of two meanings.

Defendant asks us to examine various Federal regulations pertaining to aircraft operations. Specifically, the Government argues that, as Federal regulations (14 C.F.R. § 91.79 (1976)) provide that 500 feet is the minimum safe altitude at which all aircraft may be operated, the contract should be read as making the Government liable only when the pilot is specifically ordered below 500 feet in altitude. However, 14 C.F.R. § 91.79(d) carves out an exception from the 500 feet limit for *helicopters,* stating:

Helicopters may be operated at less than the [500 feet] minimum . . . if the

5. If this suit were a suit to determine who would pay for property damaged on the ground as a result of the crash (besides the helicopter and occupants), the regulation might be of assistance. But that is not this case.

6. *See Consumers Ice Company v. United States,* 475 F.2d 1161, 1165, 201 Ct.Cl. 116, 123

operation is conducted without hazard to persons or property on the surface. 14 C.F.R. § 91.79(d) (1976).

The concern in the regulation is not for the safety of the helicopter when operating at less than 500 feet, but for the safety of persons and property *on the ground.* In the instant case, the helicopter did not pose a hazard within the meaning of the regulation as it was operating over an uninhabited part of Mt. Hood National Forest. So the regulation does not support the Government's position,[5] but rather returns the risk of loss question to the court for determination.

■ What remains is a problem of draftsmanship—a classic example of the misplaced modifier. In such a case, we are influenced greatly by the fact that the Government drafted the contract. It had the opportunity to make the provision clear, but it did not. Applying the rule of *contra proferendem,*[6] we hold that the clause should be construed against the drafter, the Government.

Under this interpretation, it is clear that the contractual provision does not require that the pilot be specifically instructed to fly at less than 500 feet in altitude. It only requires that, for the Government to be liable, the helicopter be flying at under 500 feet and following the instructions of defendant's aerial observer.

That is exactly what occurred in this case. At the time of the crash, the pilot was operating the helicopter at less than 500 feet and was under the constant direction of the Forest Service aerial observer in a spotter plane flying at a higher altitude than the helicopter. The Government, therefore, must bear the cost of the destruction of the helicopter.

(1973); *Chris Berg, Inc. v. United States,* 455 F.2d 1037, 197 Ct.Cl. 503 (1972); *Mountain Home Contractors v. United States,* 425 F.2d 1260, 192 Ct.Cl. 16 (1970); *WPC Enterprises, Inc. v. United States,* 323 F.2d 874, 163 Ct.Cl. 1 (1963).

## Damages

The question remains, however, as to the amount of damage for which the Government is liable. Plaintiffs request $42,000, the market value of the helicopter at the time of its destruction, plus interest of six percent (6%) per annum from the date of destruction, June 21, 1973. To show the market value, plaintiffs rely on the affidavit of Mr. Stu White, Aircraft's president at the time of the crash, but—at the time of the affidavit—regional marketing manager for Bell Helicopters.

Defendant responds by contending that the value for which the helicopter was insured, $40,000, is the proper valuation. In addition, defendant claims Mr. White's affidavit should not be accorded weight for it does not comply with Ct.Cl. Rule 101(f) that the affidavit show affirmatively that the affiant is competent to testify to the matters stated therein. Defendant, however, does not challenge the plaintiffs' affidavit with one of its own.

[6, 7] Plaintiffs are correct in part; the value of the helicopter is determined by its market value at the time of the accident. *H. K. Porter Co., Inc. v. Halperin,* 297 F.2d 442, 445 (7th Cir.1961); *John W. Hubbard v. United States,* 92 Ct.Cl. 381, 386 (1940). The value of the insurance policy is merely evidence of the worth of the helicopter at the time it was insured, not at the time it crashed. The affidavit, regardless of defendant's contention, does show the affiant's competence in accordance with Ct.Cl. Rule 101(f). Mr. White is the regional representative for Bell Helicopters; he has bought and sold numerous helicopters. Both the destroyed helicopter and its replacement were the same model of Bell helicopter.

■ Mr. White stated that the market value of the destroyed helicopter at the time of the accident was between $42,000 and $45,000. Plaintiffs claim the lower limit, $42,000, even though the replacement helicopter cost $45,000 and was "not quite as nice as the one which was destroyed." We think plaintiffs' evidence is sufficient for the court to fix the market value of the helicopter at the time of the accident at $42,000, and so hold.[7]

■ However, plaintiffs' additional claim for interest is not meritorious. 28 U.S.C. § 2516 (1970) provides that interest on a claim against the United States shall be allowed "only under a contract or Act of Congress expressly providing for payment thereof." This statute is strictly applied. *Komatsu Mfg. Co. v. United States,* 131 F.Supp. 949, 132 Ct.Cl. 314 (1955). As we can find no Act of Congress which provides for interest in this case (nor has any been cited to us by plaintiffs), and the contract is silent on this point, plaintiffs' claim for interest is denied.

In summary, plaintiffs are not barred from prosecuting this suit due to their receipt of the insurance proceeds; defendant is liable for the destruction of the helicopter under the contract; and plaintiffs are entitled to damages in the amount of $42,000.00, without interest.

Accordingly, defendant's motion for summary judgment is denied, plaintiffs' cross-motion for summary judgment is granted and judgment is hereby entered for plaintiffs in the amount of $42,000.00.

---

7. We note, contrary to defendant's contention, that our holding does not grant plaintiffs a "windfall" of $42,000. Defendant's argument on this point, as mentioned *supra,* is based on the theory that plaintiffs, if allowed to recover, will be left with both the insurance recovery *and* the award from this court. That is not the situation; the insurance proceeds will be re-turned to the insurance company leaving plaintiffs with only the award of this court. *See* note 1, *supra.* The return of the money is required by the insurance policy (Clause 17). This obligation was reaffirmed by plaintiffs in their briefs and again in open court by plaintiffs' counsel.