**William H. LORD**

v.

**The UNITED STATES.**

**No. 50–80C.**

United States Claims Court.

June 20, 1983.

Robert N. Jensen, Washington, D.C., for plaintiff; Peabody, Lambert & Meyers, Washington, D.C., of counsel.

Robert E. Richardson, Washington, D.C., for defendant; Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., of counsel.

## OPINION

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The present cross-motions for summary judgment relate to the request of the plaintiff—who was retroactively retired by the Navy for physical disability as of May 1, 1968—that the court award him certain benefits in addition to the retired pay which the plaintiff has received for the period since May 1, 1968.

It is concluded that there is no genuine issue as to any material fact insofar as the issues now before the court are concerned, that the plaintiff has received all the benefits to which he is entitled under the law, that the defendant is entitled to a judgment as a matter of law, and that the complaint should be dismissed.

### The Plaintiff's Relevant Medical History

While serving on extended active duty with the Navy as a Lieutenant Commander, Medical Corps, Naval Reserves, the plaintiff sustained injuries on November 12, 1967, as the result of a fall from a horse, which he was riding at the Oceania Naval Base, Norfolk, Virginia. He was hospitalized at the Portsmouth Naval Hospital, but was released from the hospital on November 15, 1967, and returned to duty on November 17, 1967. The plaintiff later had a follow-up examination at the hospital, and was then discharged from hospital care on November 29, 1967. The discharge summary stated in part as follows:

> * * * Presently he [the plaintiff] is totally asymptomatic except for slight residual deep pain. It is felt at this time that he has recovered sufficiently for discharge and return to duty. * * *

The next month, in December 1967, the plaintiff experienced an acute urinary tract infection, and was evaluated and treated by the urology service at the Portsmouth Naval Hospital. During the examination of the plaintiff on that occasion, an intravenous pyelogram showed some blunting of the minor calyces of the right kidney.

Some months later, in April 1968, the plaintiff was admitted to the hospital again and underwent testicular biopsy and varicocelectomy as part of an evaluation of low sperm count. A small direct and indirect left ingynal hernia was also found and repaired. He was discharged from the hospital to duty on April 24, 1968.

The plaintiff was released from active duty, not by reason of physical disability, on April 30, 1968.

In April 1970, the plaintiff experienced another urinary tract infection, and he consulted a private urologist at that time.

Because of back pain and pain in the lower rib cage, the plaintiff consulted private physicians in October 1970.

Then, on March 6, 1971, the plaintiff underwent a laminectomy of the T–9 and T–10 vertebrae and a T–10 rhizotomy on the right side. In connection with that operation, bone fragments were found in the vicinity of T–10. Following the operation, the plaintiff suffered complications in the nature of kidney infection, blood clot in the veins of the right calf, and pulmonary embolism. The plaintiff was discharged from the hospital on March 19, 1971, in what the hospital authorities characterized as satisfactory condition.

After the operation referred to in the preceding paragraph, the plaintiff continued to experience urinary obstruction. On April 30, 1971, he underwent a meatotomy, transurethal prostatectomy, and bilateral vasectomy.

### Attempts to Obtain Administrative Relief

On January 27, 1972, the plaintiff submitted to the Veterans Administration an application for disability benefits. Extensive proceedings were conducted in connection with the plaintiff's application before the Veterans Administration Center in Philadelphia, Pennsylvania, and before the Board of Veterans Appeals in Washington, D.C. On February 6, 1974, the Veterans Administration retroactively awarded the plaintiff a 70 percent service-connected dis-

ability rating as of January 27, 1972; and the Veterans Administration subsequently awarded the plaintiff a service-connected disability rating of 80 percent effective November 30, 1977.

The final rating decision of the Veterans Administration on the plaintiff's case was dated May 17, 1979, and it shows the following:

Anxiety neurosis with depressive features and paranoid tendencies

30% from 1–27–72

50% from 11–3–77

Residuals, fracture T10 with neuropathy, P.O., with laminectomy and deformity of 10th vertebra body, fibromyositis of paravertebral muscles

30% from 1–27–72

Prostatectomy, neurogenic bladder, residuals of

20% from 1–27–72

Loss of erectile power

20% from 1–27–72

Right pyelonephritis with hydronephrosis

10% from 1–27–72

Scars, left herniorrhaphy and varicocelectomy

0% from 1–27–72

Service connected combined disability

70% from 1–27–72

80% from 11–30–77

On March 23, 1974, after the Veterans Administration on February 6, 1974, awarded the plaintiff a 70 percent service-connected disability rating as of January 27, 1972, the plaintiff filed an application with the Board for Correction of Naval Records, asking that his record be corrected to show that he was retired from the Navy by reason of physical disability. On May 1, 1975, the Board denied the plaintiff's application, and he was so advised by means of a letter dated May 14, 1975. On June 3, 1975, the plaintiff requested a rehearing on his application, and this request was denied on June 11, 1975. Subsequently, on December 8, 1975, the plaintiff submitted a request for reconsideration of his application, and this request was denied by the Board in a letter dated October 27, 1977.

*Previous Court Proceedings*

On January 30, 1980, the plaintiff filed a complaint (then denominated a petition) in this court's predecessor, the U.S. Court of Claims. In the complaint, the plaintiff alleged (*inter alia*) that at the time when he was released from active duty by the Navy on April 30, 1968, he was physically unfit for active duty due to an undiagnosed and untreated urinary tract abnormality manifested by a chronic urinary tract infection, compression fractures of the T–10 vertebra, and other ailments. The plaintiff asked the court to enter a judgment directing the Navy to place him in a disability retired status, to grant him disability retired pay commencing April 30, 1968, to award him the value of the commissary, exchange, medical, and theater privileges to which he would have been entitled if he had been placed in a disability retired status at the time of his release, to reimburse him for medical expenses which he was required to defray for himself and his family after he was released from active duty, to award him interest on the amounts due him, and to award him attorney's fees and court costs.

Later in 1980, the parties filed cross-motions for summary judgment. Those cross-motions for summary judgment were denied by the Court of Claims in an order dated April 24, 1981. In the order, the court remanded the case to the Board for Correction of Naval Records for further proceedings, including the granting of a hearing to the plaintiff, which proceedings were to be conducted in accordance with guidelines outlined in the order.

Following the remand of the case to the Board for Correction of Naval Records, the Board granted the plaintiff an oral hearing on October 7, 1981. In a report to the Secretary of the Navy dated October 14, 1981, the Board found that the plaintiff's name should have been placed on the Temporary Disability Retired List on May 1, 1968, and on the Retired List on May 1, 1973, by reason of disabilities. The Board recommended that the plaintiff's record

should be corrected to show that he was not released from active duty on April 30, 1968, and was not discharged on July 29, 1968; that the Secretary of the Navy on April 30, 1968, determined him unfit to perform the duties of his rank by reason of physical disability, with a disability rating of 30 percent; that the Secretary of the Navy placed his name on the Temporary Disability Retired List effective May 1, 1968, pursuant to 10 U.S.C. § 1202; that the Secretary of the Navy on April 30, 1973, determined him unfit to perform the duties of his rank by reason of physical disability, with a disability of 70 percent; and that the Secretary placed his name on the Retired List by reason of permanent physical disability effective May 1, 1973, pursuant to 10 U.S.C. § 1210.

The 30 percent disability rating as of April 30, 1968, found by the Board for Correction of Naval Records was based upon: "(1) Vertebra, T–10, fracture of, residuals with cord involvement, # 8060," and "(2) Scars, Left Herniorrhaphy and Varicocelectomy, # 7160."

The 70 percent disability rating determined by the Board for Correction of Naval Records as of April 30, 1973, was based on the following findings:

(1) Residuals, Fracture T–10 w/Neuropathy, P.O. w/Laminectomy and Deformity of 10th Vertebra Body, Fibromyosistis of Paravertebral Muscles, # 8069;

(2) Anxiety Neurosis w/depressive features and paranoid tendencies, # 3000;

(3) Prostatectomy, Neurogenic Bladder, Residuals of, # 5969;

(4) Penis, deformity of, w/loss of erectile power, # 6079;

(5) Right Pyelonephritis w/Hydro-nephrosis (History of senal Calculi), # 5900; and

(6) Scars, Left Herniorrhaphy and Varicocelectomy, # 7090.

The findings and recommendations of the Board for Correction of Naval Records were approved by the Secretary of the Navy, and the corrective actions recommended by the Board were accomplished.

The Navy Finance Center computed the amount of back pay that was due the plaintiff as a result of the correction of his record, deducted the sums which the plaintiff had received from the Veterans Administration, and paid the plaintiff $70,439.70 as the net amount of retired pay due the plaintiff for the period from May 1, 1968, through April 30, 1982.

Following the completion of the administrative procedures that occurred pursuant to the remand by the Court of Claims, the plaintiff on July 22, 1982, filed with the Court of Claims a formal notice pursuant to that court's Rule 150(d) [this court's Rule 60.1(b)(4)], stating that the action by the Navy on the court's remand did not constitute a satisfactory disposition of the plaintiff's cause. In the notice, the plaintiff asked the court to take the following actions:

1. Award the plaintiff disability retired pay, with a 70 percent disability rating, from January 27, 1972, rather than from April 30, 1973, as determined by the Navy on remand.

2. Award the plaintiff interest on the disability retirement payments for the period before May 1982.

3. Award the plaintiff the value of the commissary and exchange entitlements for which he would have been eligible if he had been placed in a disability retired status as of April 30, 1968.

4. Award the plaintiff the medical insurance costs incurred by him during the period from 1968 through 1981.

5. Award the plaintiff the amount of his unreimbursed medical expenses during the period from 1968 through 1981.

6. Award the plaintiff the amount of the unreimbursed medical expenses which he incurred for his dependents.

7. Award the plaintiff attorney's fees, expenses, and court costs.

The Court of Claims passed out of existence at the close of September 30, 1982, and

the present case was automatically transferred to the docket of this court effective at the beginning of October 1, 1982, pursuant to the provisions of the Federal Courts Improvement Act of 1982 (Pub.L. 97–164; 96 Stat. 25).

The defendant on December 10, 1982, filed what it referred to as a "Renewed Motion for Summary Judgment." The thesis of the motion and supporting brief is that, under the corrective action taken by the Navy pursuant to the findings and recommendations of the Board for Correction of Naval Records and the approval of the Secretary of the Navy, the plaintiff has received all the benefits due him. The plaintiff subsequently filed a cross-motion for summary judgment and supporting brief. Thereafter, further briefs were filed by both parties.

### Discussion

The claims for the additional benefits outlined by the plaintiff in the formal notice which he filed with the Court of Claims on July 22, 1982, will now be discussed.

*Effective date of 70-percent disability rating*

The plaintiff's first request is for a holding by the court that he is entitled to disability retired pay, with a 70 percent disability rating, from and after January 27, 1972, rather than from May 1, 1973, as determined by the Navy.

The plaintiff, however, does not refer to any evidentiary material in the documents submitted in connection with the pending cross-motions for summary judgment, or to any items of evidence that the plaintiff would be prepared to produce if a trial were to be held, which would establish that the percentage of the plaintiff's physical disability for retirement purposes was 70 percent as of January 27, 1972. The plaintiff merely says that the Veterans Administration and the Navy use the same methodology for determining the percentage of physical disability; that after a number of physical examinations and hearings, the Veterans Administration determined that the plaintiff was entitled to a 70 percent disability rating from and after January 27, 1972; and that there is no evidence in the record which suggests that the plaintiff's impairment was different on May 1, 1973, from what it was in January 1972.

■ Disability ratings by the Veterans Administration and by the Armed Forces are made for different purposes. The Veterans Administration determines to what extent a veteran's earning capacity has been reduced as a result of specific injuries or combination of injuries (38 U.S.C. § 355 (1976)). The Armed Forces, on the other hand, determine to what extent a member has been rendered unfit to perform the duties of his office, grade, rank, or rating because of physical disability (10 U.S.C. § 1201 (1976 and Supp. V 1981)). Accordingly, Veterans Administration ratings are not determinative of the issues involved in military disability retirement cases. *Stephens v. United States,* 174 Ct.Cl. 365, 373, 358 F.2d 951, 955 (1966); *Bennett v. United States,* 200 Ct.Cl. 635, 643–44 (1973).

The Navy, therefore, was determining the degree of the plaintiff's unfitness, because of physical disability, to perform the duties of a Lieutenant Commander, Medical Corps, Naval Reserves, as of the time when the plaintiff was released from active duty on April 30, 1968, and thereafter. With respect to this standard, the evidence before the Board for Correction of Naval Records, and now before the court on the cross-motions for summary judgment, was that the plaintiff, after his release from active duty with the Navy on April 30, 1968, was able to, and did, work long hours in reestablishing himself in the private practice of medicine and, thereafter, in maintaining his practice. The length of the period during which the plaintiff worked fulltime is not clearly revealed by the record, but the plaintiff testified before the Board for Correction of Naval Records that, on the eve of his laminectomy operation in the early part of March 1971, he worked until 3 a.m. (although it was necessary for him to take codeine tablets in order to put in such an extremely long workday), and that he went back to work, apparently fulltime, 2 weeks

after the operation. The plaintiff's testimony before the Board indicated that although he was not able to work fulltime by the time of the hearing before the Board on October 7, 1981, he was still devoting 24 or 25 hours per week to the practice of medicine.

The facts before the court on the pending cross-motions for summary judgment fail to show that the degree of the plaintiff's unfitness to perform the duties of a Lieutenant Commander, Medical Corps, Naval Reserves, because of physical disability had reached the 70 percent level at any time earlier than April 30, 1973, the date determined by the Navy.[1]

■ The determination of a military correction board concerning the percentage of disability of a member of the Armed Forces for retirement purposes, as approved by the head of the particular military department, cannot be overturned by the court unless the court concludes that such determination was arbitrary, capricious, not supported by substantial evidence, or contrary to applicable laws and regulations. *Stephens v. United States, supra,* 174 Ct.Cl. at 371–72, 374, 358 F.2d at 954, 955. Evidence attacking such a determination as arbitrary, etc., must be clear and convincing. *Finn v. United States,* 212 Ct.Cl. 353, 356, 548 F.2d 340, 342 (1977).

As the record before the court in the present case does not contain the sort of clear and convincing evidence that would justify adverse action by the court, and as the availability of such evidence has not been indicated, the determination of the Board for Correction of Naval Records, with the approval of the Secretary of the Navy, that the proper date for the plaintiff's 70 percent disability rating for retirement purposes was April 30, 1973, must be accepted by the court.

*Interest*

It has been mentioned earlier in the opinion that the Navy, on the remand from the Court of Claims, awarded the plaintiff disability retirement pay for the period beginning May 1, 1968, and extending through April 30, 1982. The amount of this back pay, after deducting amounts received by the plaintiff from the Veterans Administration for the same period, was $70,439.70.

The plaintiff now asks the court for an award of interest on the amount stated in the preceding paragraph.

■ This court is prohibited by 28 U.S.C. § 2516(a) (1976) from allowing interest in a judgment unless the action is taken under a contract or act of Congress which expressly provides for the payment of interest. This statutory provision is strictly applied. *S.W. Aircraft Inc. v. United States,* 213 Ct.Cl. 206, 215, 551 F.2d 1208, 1213 (1977).

In the present case, the monetary relief which the plaintiff received pursuant to the correction of his record was paid under 10 U.S.C. § 1552(c) (1976). That provision authorizes payment "for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or for the payment of a fine or forfeiture," but it does not authorize the payment of interest.

■ Consequently, the plaintiff's claim for interest on the $70,439.70 which he received from the Navy pursuant to the correction of his record cannot be allowed by the court.

### Value of commissary and exchange privilege

■ During the period between May 1, 1968, and the date when the plaintiff was actually placed on the Temporary Disability Retired List, the plaintiff was not entitled to, and did not enjoy, the privilege of patronizing military commissaries and exchanges. He now requests the court to

---

1. In his brief, the plaintiff asserts that, if given an opportunity at a trial, he could prove that his degree of unfitness to perform the duties of his rank was 70 percent as early as April 30, 1968. That is outside the scope of his formal submission under this court's Rule 60.1(b)(4), as well as inconsistent with the plaintiff's testimony before the Board for Correction of Naval Records and summarized in the text of the opinion.

award him the value of such privilege for the period mentioned.

As stated earlier in the opinion, 10 U.S.C. § 1552(c) provides that in a situation where the military record of an active or retired member of the Armed Forces is corrected, the particular military department may pay for—and only for—"the loss of pay, allowances, compensation, emoluments, or *other pecuniary* benefits, or for the repayment of a fine or forfeiture" (emphasis supplied). Thus, all the various items of relief authorized by the statute are pecuniary in nature. *Cf. Ray v. United States,* 197 Ct.Cl. 1, 5–6, 9, 453 F.2d 754, 756, 758 (1972). The word "pecuniary" means "Consisting of money; exacted or given in money; also, entailing a money penalty," or "Relating or pertaining to money." WEBSTER'S NEW INTERNATIONAL DICTIONARY (2nd Edition, Unabridged, 1955).

Thus, section 1552(c) entitles the plaintiff to recover for those pecuniary benefits, or payments in money, which he would have received if he had been retired for physical disability on May 1, 1968. The privilege of patronizing a military commissary or exchange is not a pecuniary benefit.

Moreover, the plaintiff, in support of his cross-motion for summary judgment on this point, has not provided the court with any data on the basis of which the commissary and exchange privilege for the period involved here could be evaluated. Thus, the claim is wholly speculative. This is another reason why the plaintiff's claim for the value of the commissary and exchange privilege during the pertinent period must be denied. *Dilley v. Alexander,* 627 F.2d 407, 414 (D.C.Cir.1980).

### Medical insurance costs

 In the present proceedings, the plaintiff requests reimbursement for the medical insurance costs which he incurred between the time when he was released from active duty and the time when the Navy placed him in a retired status pursuant to the correction of his record.

As stated earlier in the opinion, the plaintiff is entitled to recover for—and only for—the monetary payments which he would have received if he had been placed by the Navy in a retired status on May 1, 1968. The plaintiff has not referred the court to any statutory provision—and the court is not aware of any—under which the plaintiff would have been entitled to reimbursement from the Navy for medical insurance costs if he had been in a retired status on and after May 1, 1968.

Consequently, the court is not authorized to make an award to the plaintiff on this particular claim.

### Unreimbursed medical expenses

The plaintiff also requests reimbursement for medical expenses which he incurred for himself during the period following his release from active duty and for which he has not been reimbursed (presumably through medical insurance).

The statutory authorization for the granting of medical services to retired military personnel is found in 10 U.S.C. § 1074(b) (Supp. V 1981). This provision states as follows:

> (b) Under joint regulations to be prescribed by the Secretary of Defense and the Secretary of Health and Human Services, a member or former member of a uniformed service who is entitled to retired or retainer pay, or equivalent pay *may, upon request,* be given medical and dental care in any facility of any uniformed service, *subject to* the availability of space and facilities and the capabilities of the medical and dental staff. The Secretary of Defense and the Secretary of Health and Human Services *may,* with the agreement of the Administrator of Veterans' Affairs, provide care to persons covered by this subsection in facilities operated by the Administrator and determined by him to be available for this purpose on a reimbursable basis at rates approved by the President. [Emphasis supplied.]

It is plain from the statutory language just quoted that a retired member of a uniformed service is not entitled to medical care as a matter of right, but that he or she *may* be given such care in a facility operat-

ed by one of the uniformed services (or by the Veterans Administration under certain circumstances) *if* space in such a facility is available and *if* the medical staff of the facility is capable of rendering the appropriate care.[2] As the availability of medical care for retired personnel of the uniformed services is discretionary with the services, retired personnel who fail to receive such care cannot successfully maintain an action for money damages based on such failure. *Cf. Watt v. United States,* 246 F.Supp. 386, 388 (E.D.N.Y.1965); *Dunn v. United States Department of Agriculture,* 654 F.2d 64, 67 (Ct.Cl.1981).

Consequently, the plaintiff's claim for the unreimbursed medical expenses which he incurred on behalf of himself during the period before he was placed in a retired status must be denied.

The plaintiff, in the present proceeding, also asks for an award to cover the medical expenses which he incurred for his dependents after he was released from active duty and before he was placed in a retired status, and for which he has not been reimbursed (apparently through health insurance).

The same reasoning previously outlined in the discussion of the plaintiff's claim for the unreimbursed medical expenses which he incurred on behalf of himself is equally applicable to his claim for unreimbursed medical expenses incurred on behalf of his dependents. The statutory authorization for the furnishing of medical care to dependents of retired military personnel is found in 10 U.S.C. § 1076(b) (Supp. V 1981), and provides in part as follows:

(b) Under joint regulations to be prescribed by the Secretary of Defense and the Secretary of Health and Human Services, a dependent of a member or former member * * * *may, upon request,* be given * * * medical and dental care * * * in facilities of the uniformed services, *subject to* the availability of space and facilities and the capabilities of the medical and dental staff * * *. [Emphasis supplied.]

Here, again, providing medical care for dependents of retired military personnel is not a mandatory duty placed upon the uniformed services, but, rather, it is discretionary with the services. Consequently, a legal action cannot be successfully maintained because of the failure of dependents to receive such care.

*Attorney's fees, expenses, and court costs*

■ Although the plaintiff stated in his brief that he is not pressing at this time his claim for attorney's fees, but instead intends to proceed with that claim after the entry of judgment on his other claims, it is necessary to deny his claim for attorney's fees, litigation expenses, and court costs. For the reasons stated earlier in the opinion, the plaintiff, at the end of the case, is not entitled to a judgment by the court, inasmuch as he has received, through administrative action, all the benefits to which he is entitled.

As the plaintiff is not, ultimately, the prevailing party in the litigation, his claim for attorney's fees, etc., cannot be considered. 28 U.S.C. § 2412 (Supp. V 1981).

### Conclusion

For the reasons stated in the opinion, the court concludes that there is no genuine issue as to any material fact insofar as the issues now before the court are concerned, and that the defendant is entitled to a judgment as a matter of law. Accordingly, the defendant's renewed motion for summary judgment is granted and the plaintiff's cross-motion for summary judgment is denied.

The complaint will therefore be dismissed.

IT IS SO ORDERED.

---

2. By contrast, members of the uniformed services on active duty are entitled to medical care as a matter of right under 10 U.S.C. § 1074(a) (Supp. V 1981). *Gearinger v. United States,* 188 Ct.Cl. 512, 518–19, 412 F.2d 862, 866 (1969).