CHEVRON CHEMICAL CORPORATION

v.

The UNITED STATES.

No. 355–83L.

United States Claims Court.

Aug. 16, 1984.

808

Robert D. Wallick, Washington, D.C., attorney of record, for plaintiff. Timothy B. Atkeson, Stephen A. Fennell, Ildiko P. DeAngelis and Steptoe & Johnson, Chartered, Washington, D.C., of counsel.

Diane L. Donley, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant. Alice P. Wegman, U.S. Environmental Protection Agency, Washington, D.C., of counsel.

## OPINION

MEROW, Judge:

This case comes before the court on motions for summary judgment. The matter involves a dispute stemming from actions taken under the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136. Jurisdiction is based on 28 U.S.C. § 1491.

On February 28, 1979, pursuant to FIFRA, the Environmental Protection Agency (EPA) issued an emergency order suspending registrations for specified uses of pesticides containing 2- (2, 4, 5-trichlorophenoxy) propionic acid (Silvex), and further issued notice of intent to cancel the registrations for Silvex products. The emergency suspension order was effective immediately and included a prohibition against the sale or use of existing stocks.

On May 7, 1979 plaintiff and defendant entered into an agreement regarding suspension and cancellation of Silvex pesticides. The agreement prescribed a procedure by which the agency could fulfill its statutory obligation under section 19 of FIFRA to "accept at convenient locations for safe disposal a pesticide the registration of which is cancelled under section 6(c) if requested by the owner of the pesticide." 7 U.S.C. § 136q(a). Plaintiff, as holder of

registrations for Silvex, waived its right, pursuant to section 6 of FIFRA, to an administrative hearing on the suspension and cancellation of its registrations, and agreed to use its best efforts to retrieve the Silvex pesticides from its customers (an obligation not otherwise devolving upon plaintiff under the statute, as noted in the agreement at 6). Defendant agreed to designate, within 8 months of the date of the agreement, sites to which the pesticides could be transported for disposal. Plaintiff acquired the pesticides from its customers. Defendant, however, did not designate disposal sites until January 1981 for the solid Silvex or until March 1983 for the liquid Silvex.

On June 15, 1981 plaintiff and defendant entered into a stipulation settlement for the cost of the Silvex pursuant to section 15 of FIFRA, 7 U.S.C. § 136m.

In this action plaintiff seeks to recover the costs incurred in storing the pesticides from February 1980 (the date on which EPA was obligated under the agreement to specify the disposal sites) to the date on which the pesticides were disposed. Plaintiff seeks (1) $642,266 in damages based on breach of an express contract, or (2) in the alternative, $642,266 based on implied in fact contract, and (3) $524,312 based on an unlawful taking of property in violation of the fifth amendment of the Constitution. Plaintiff moved for summary judgment on counts I and III. Defendant opposes plaintiff's motion and cross-moved for summary judgment on all three counts.

For the reasons given below, it is concluded that plaintiff is entitled to summary judgment on count I and defendant's cross-motion for summary judgment on counts II and III is granted.

### 1. *Express Contract Claim*

■ Plaintiff argues defendant breached the settlement agreement because it did not designate disposal sites within eight months. Defendant contends that FIFRA does not authorize payment of storage costs or, alternatively, that the settlement agreement does not provide a basis for payment of storage costs. Plaintiff also argues that, even if the settlement agreement gives rise to a claim, the official who signed the agreement did not have contractual authority. Finally, defendant contends it is not liable for damages because the delay was a sovereign act.

### a) FIFRA

Defendant argues that the statute only authorizes payment of the price of the pesticides. Section 15(b) of FIFRA, 7 U.S.C. § 136m states: "The amount of the indemnity payment under subsection (a) of this section to any person shall be determined on the basis of the cost of the pesticide owned by such person immediately before the notice to the registrant; * * * except in no event shall an indemnity payment to any person exceed the fair market value of the pesticide * * *." Defendant contends this section necessarily limits the agency's liability to indemnification.

Section 19 of FIFRA authorized the agency to accept pesticides for disposal. The act does not preclude normal contractual agreements relating to implementing its terms. A purpose of the May 1979 settlement agreement was to facilitate disposal of the pesticide. Although storage costs are not expressly included in the statute, EPA may incur liability based on breach of contract for storage costs after February 1980, the date specified in the agreement.

In *Anthony P. Miller v. United States*, 172 Ct.Cl. 60, 348 F.2d 475 (1965), the court allowed recovery above the statutory authorization for changed conditions and defective specifications and drawings. The court stated:

Concededly, Congress did not, in specific terms provide that a contractor may be reimbursed for expenses incurred (in excess of its mortgage proceeds) for additional work caused by errors or defects in the government's plans and specifications or required by changed conditions encountered in the performance of the contract. Nevertheless, we find it difficult to conclude that Congress meant the

contractor would remain without a remedy in all such cases. Therefore, we will not attribute to Congress an intention that would produce an impractical, unjust and unworkable result unless that contention appears clearly on the face of the statute or in the supporting record. 172 Ct.Cl. 68, 348 F.2d 480.

Similarly, in the present case, EPA may incur liability for damages resulting from a breach of the settlement agreement entered into pursuant to section 19 of FIFRA, even though such recovery is not expressly provided in the statute.

### b) *Authority*

■ Prior to litigation, an agency is generally authorized to enter into settlement agreements. *Cannon Construction Co. v. United States,* 162 Ct.Cl. 94, 103, 319 F.2d 173, 178 (1963); *Construction Service Co. v. United States,* 174 Ct.Cl. 756, 764, 357 F.2d 973, 977 (1966). Section 19(a) of FIFRA, 7 U.S.C. § 136q, states:

> The Administrator shall, after consultation with other interested Federal agencies, establish procedures and regulations for the disposal or storage of packages and containers of pesticides and for disposal of excess amounts of such pesticides, and accept at convenient locations for safe disposal a pesticide the registration of which is cancelled under Section 136d(c) of this title if requested by the owner of the pesticides.

■ In oral argument defendant urged that Mr. Jellinek, the EPA official involved, had no authority to bind the United States to the 8 month timetable. Nothing is of-

fered to support this contention. Allegations of counsel constitute an insufficient basis on which to support a summary judgment. *Garcia v. United States,* 123 Ct.Cl. 722, 732, 108 F.Supp. 608, 613 (1952) (statements of fact contained in the brief of counsel, which are not otherwise supported in the record, may not serve as the basis of judgment under Court of Claims Rule patterned closely upon Federal Rule 56); *Singleton v. United States,* 6 Cl.Ct. 156 at 166 (1984) (assertions of facts made by counsel in argument and brief are insufficient to support summary judgment).[1]

Defendant argues in its brief that Mr. Jellinek was without procurement authority. This contention is misdirected. Plaintiff's claim is not based on a procurement contract, but on an authorized settlement agreement which included a provision as to the time for the designation of disposal sites. There is no indication that Mr. Jellinek could have the authority to enter into a settlement agreement, but not have authority to agree on the time for EPA to act with respect to disposal sites.

### c) *Settlement Agreement*

■ It is recognized that settlement or compromise agreements are contractual in nature. *Blackhawk Heating & Plumbing v. United States,* 224 Ct.Cl. 111, 135, 622 F.2d 539, 552 (1980); *Cheyenne-Arapaho Tribes v. United States,* 229 Ct.Cl. 434, 439, 671 F.2d 1305, 1309 (1982). The agreement reached between the parties provides:

> No later than 8 months after the date of execution of this agreement [May 7, 1979], the Agency shall designate sites to

---

**1.** Defendant also contends that plaintiff's motion for summary judgment is deficient because it relies on evidence other than the kinds listed in RUSCC 56. A motion for summary judgment may be supported by pleadings, depositions, answers to interrogatories, admissions and affidavits. RUSCC 56(c). The court may properly consider exhibits identified in a sworn affidavit, RUSCC 56(e); *Schy v. Susquehanna Corp.,* 419 F.2d 1112, 1116 (7th Cir.), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). The forms of evidence described in Rule 56(e) are not the exclusive means of presenting evidence in a summary judgment motion. Wright, Miller

& Kane, *Federal Practice & Procedure,* Civil 2d § 2721. Rule 56(e) is an enlarging provision as to what may be considered, not a restriction. *Yong Hong Keung v. Dulles,* 127 F.Supp. 252 (D.C.Mass.1954). A court may consider any material that would be admissible or usable at trial. Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 2d § 2721; *Madeirense Do Brasil S/A v. Stulam-Emrick Lumber Co.,* 147 F.2d 399 (2d Cir.) *cert. denied,* 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982 (1945). Plaintiff's exhibits are properly within the evidentiary scope of Rule 56.

which Silvex pesticides and Interim Storage Facilities may be transported for disposal. Within thirty days of designation, the Silvex pesticides at Interim Storage Facilities shall be transferred to the disposal sites.

■ Defendant argues the time limit was a goal rather than an express condition. The agreement states the agency *shall* designate sites. The language is mandatory. Contractual language, clear on its face, is given its usual and customary meaning. *American Science & Engineering v. United States*, 229 Ct.Cl. 47, 57, 663 F.2d 82, 88 (1981); *S.W. Aircraft, Inc. v. United States*, 213 Ct.Cl. 206, 212, 551 F.2d 1208, 1212 (1977). The mandatory nature of the language becomes more apparent when this provision is contrasted with section II A of the agreement. This provides that Chevron would use its "best efforts" to locate Silvex pesticides. Similar language could have been used if the parties intended the 8 month timetable to be a goal rather than an express condition. In addition, it is clear that the agency was aware of the deadline imposed by the settlement agreement.

### d) *Sovereign Act*

■ Defendant argues that even if the 8 months is an enforceable contractual provision, the condition is excused because it acted in its sovereign capacity. The disposal program may be general and public in nature. *Jones v. United States*, 1 Ct.Cl. 383 (1865); *Horowitz v. United States*, 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 736 (1925). However, if an agency enters into contracts to facilitate administration of a program sovereign in nature, the agreements are enforceable under general contract principles. *Sunswick Corp. v. United States*, 109 Ct.Cl. 772, 798, 75 F.Supp. 221, 228, *cert. denied*, 334 U.S. 827, 68 S.Ct. 1337, 92 L.Ed. 1755 (1948).

Defendant asserts the delays in designating disposal sites resulted from agency difficulty in obtaining information about the nature, quantity and location of the pesticides, and in deciding whether to contract separately for disposal of liquid and solid Silvex. Delays were also caused by the liquid Silvex contractor's difficulty in obtaining proper state permits. These delays are not the kind contemplated by the sovereign act doctrine. They are difficulties which a private contractor would confront in similar circumstances. The sovereign act defense is inapplicable.

For the above stated reasons, plaintiff's motion for summary judgment on the issue of liability for breach of contract is granted.

### 2. *Implied In Fact*

■ Since plaintiff is entitled to recover for breach of the settlement agreement, its claim based on an implied in fact contract must fail. Because an express settlement agreement exists, an implied contract dealing with the same subject cannot arise. *ITT Federal Support Services, Inc. v. United States*, 209 Ct.Cl. 157, 168, 531 F.2d 522, 528 (1976); *see, e.g., Klebe v. United States*, 263 U.S. 188, 192, 44 S.Ct. 58, 59, 68 L.Ed. 244 (1923); *Algonac Manufacturing Co. v. United States*, 192 Ct.Cl. 649, 673, 428 F.2d 1241, 1255 (1970).

Defendant's motion for summary judgment dismissing plaintiff's implied in fact claim is granted.

### 3. *Unlawful Taking*

■ Plaintiff's claim for an unlawful taking without just compensation must also fail. The fifth amendment taking clause has limited application to the relative property rights of party litigants when those rights have been voluntarily created by contract. *See J.J. Henry Co. v. United States*, 188 Ct.Cl. 39, 46, 411 F.2d 1246, 1249 (1969). In such instances interference with contractual rights generally gives rise to a breach claim, not a taking claim. *Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 770, 572 F.2d 786, 818 (1978). As plaintiff will receive compensation through its breach of contract claim, a separate claim based on the fifth amendment does not arise in this circumstance.

Defendant's motion for summary judgment dismissing plaintiff's fifth amendment taking claim is granted.

### Conclusion

For the above stated reasons, it is ORDERED:

(1) Upon the conclusion of proceedings in this matter, judgment shall then be entered dismissing counts II and III of the complaint;

(2) By separate order, proceedings to determine the amount of recovery by plaintiff under count I of the complaint will be initiated.